No. 47,304

EVELYN SUE MONTEZ and MANUEL J. MONTEZ, *Appellees,* v.
TONKAWA VILLAGE APARTMENTS, a Corporation, *Appellant.*

(523 P. 2d 351)

Opinion field June 15, 1974.

*David R. Frensley,* of Sheffrey, Ryder, Skeer, Krigel and Rose, of Kansas City, Missouri, argued the cause, and *Timothy J. Evans,* of Loughbom and Docking, of Kansas City, Kansas, was with him on the brief for the appellant.

*Robert V. Wells,* of Kansas City, Kansas, argued the cause, and *Samuel J. Wells,* also of Kansas City, Kansas, was with him on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: The determinative issue in this case is whether the trial court abused its discretion in refusing to set aside a default judgment on the defendant's plea of inadvertence and excusable neglect.

On December 27, 1971, the plaintiff Evelyn Montez slipped and fell on some icy steps leading to her third floor apartment. On

March 28, 1972, she brought this suit for $15,000 for her injuries, tangible and intangible; her husband Manuel joined her suit with a claim for $2,000, basically for loss of consortium.

The Montez apartment was in a complex known as Tonkawa Village Apartments in Kansas City, Kansas. Title to the complex, when Mrs. Montez fell and when she sued, was in Tonkawa Village, Inc., a Missouri corporation. The corporation was an instrumentality created for financing purposes by five individuals who exercised their beneficial ownership of the apartment complex through a limited partnership. The defendant named in plaintiffs' petition was obviously intended to be the corporate owner of the complex, albeit it was misnamed and was described as a Kansas corporation.

When the petition was filed counsel directed that service be made on the "Resident Manager for defendant." The next day, March 29, 1972, the deputy sheriff to whom the task was assigned sought out the resident manager of the complex, one Warren "Sandy" Nyland, and asked him if he was in fact the resident manager for the defendant. Upon receiving an affirmative reply the deputy delivered a copy of the summons and petition. His return showed that he had served the defendant "Tonkawa Village Apartments, a corporation by Serving Resident Manager Personally—Sandy Nyland."

Nyland's job was to manage the day-to-day operations of the apartment complex. He placed the papers he received from the deputy with others on his desk and went on about his business; neither he nor anyone else ever saw them again. He could only speculate that they were knocked off the desk and mingled with the trash when the office was cleaned. Although he meant to discuss the papers with his superiors he neglected to do so. He saw no particular urgency in the matter since an insurance agent had already made several trips to the apartments and had interviewed him about Mrs. Montez's accident. He assumed his employers had received copies, but in fact none of the principals involved nor their insurance company had any knowledge of the suit—only Sandy Nyland knew, and he forgot.

Naturally no answer was filed, and on May 12, 1972, plaintiffs' counsel took default judgment in favor of Mrs. Montez for the $15,000 prayed for. The hearing was distinctly informal, with no sworn testimony or exhibits being introduced. The court's award was based on the "statements and arguments of counsel as to the nature, extent of damage and the contents of the medical report

and doctor's statements as to the expenses for said treatment relative to the injuries suffered by the plaintiff as set forth in her petition." No record was made of any disposition of the claim of Mr. Montez. The trial judge later stated orally that to him the absence of any notes or other written record indicated that he had considered it and denied it, but that determination was not journalized either.

On July 28, 1972, one of the principal owners of the apartment complex learned for the first time that the judgment had been entered. On August 9, 1972, the following motion was filed to set aside the judgment:

"Comes now Tonkawa Village, Inc. and pursuant to K. S. A. 60-255 (*b*) and K. S. A. 60-260 (*c*) moves the Court to set aside the judgment by default entered herein on May 12, 1972, and as grounds therefor states that movant has a meritorious defense and failed to answer plaintiffs' petition as a result of mistake, inadvertence, surprise, and/or excusable neglect and said judgment adversely affects persons not parties to this suit, or for the reason the judgment is void for lack of personal jurisdiction in that this movant was not properly served in accordance with the laws of the State of Kansas.

"WHEREFORE, defendant moves the Court to sustain its motion and allow it to file an answer to the petition in the manner and form set forth in Exhibit C."

Attached to the motion was a proposed answer consisting of a general denial and an allegation that Mrs. Montez's injuries, if any, were the result of her own negligence.

At its hearing on the motion the trial court had before it affidavits establishing the facts recited above, and others not material to the primary issue before this court. The court overruled the motion, allowing the judgment to stand. It is from this order that the defendant has appealed.

In addition to its claim of excusable neglect, which we find determinative and will discuss later, defendant makes a number of arguments which we regard as subsidiary. It contends, for example, that it was not properly served because it claims Nyland was not its "managing or general agent" as required by K. S. A. 60-304 (*e*) for personal service on a corporation. Nyland, it says, was a mere employee whose status did not rise to that of "managing" agent. And besides, it says, Nyland was employed by the limited partnership and not by the corporation, so he wasn't defendant's "agent" at all. Although we need not decide the issue, we note that the trial court made a factual determination contrary to defendant's contention. See *Freeman v. Keltner*, 175 Kan. 37, 259 P. 2d 228.

Another of defendant's arguments is based on the misnomer of the defendant in the petition and the fact that it was described as a Kansas corporation. The fact remains that in its motion to set aside the judgment, quoted above, the defendant recognized that it was the object of the suit, and the intended defendant. It pleaded its own excusable neglect, and asked for leave to answer and defend. The same "self-recognition" is evident in the defendant's notice of appeal, and in this court it seeks the same relief. Compare, *Marr v. Geiger Ready-Mix Co.*, 209 Kan. 40, 495 P. 2d 1399.

Additionally, it contends the judgment should be set aside because it was not based on any evidence, but only on the unsworn statements of counsel. It cites such cases as *Becker v. Roothe*, 184 Kan. 830, 339 P. 2d 292 for the proposition that a default judgment for unliquidated damages is irregular and voidable where not supported by proof of damages. While there is much merit to this argument, we need not decide the point in view of our disposition of the case.

In the order appealed from the trial court found on the main issue simply "That movant fails to show 'mistake, inadvertance, surprise or excusable neglect.'" In this we believe the court erred.

We have just recently examined the question of opening default judgments in *Reliance Insurance Companies v. Thompson-Hayward Chemical Co.*, 214 Kan. 110, 519 P. 2d 730. We there recapitulated some of the underlying principles reflected in our earlier cases. Among them are:

"Defaults are not favored in law but become necessary when the inaction of a party frustrates the orderly administration of justice." (Id., Syl. ¶ 1.)

"The granting of relief from a default judgment rests in the sound discretion of the district court." (Id., Syl. ¶ 2.)

"The exercise of judicial discretion requires a judge have due regard for what is just under prevailing circumstances and not exercise that discretion in an arbitrary fashion." (Id., Syl. ¶ 3.)

". . . Consideration should be given to whether the party's conduct reflects neglectful indifference or negligence amounting to reckless indifference." (Id., p. 117.)

In that case we once against recognized that the provisions of K. S. A. 1973 Supp. 60-255 (*b*) and K. S. A. 60-260 (*b*) were taken from the Federal Rules of Civil Procedure, and acknowledged the guidance to be derived from applicable federal cases.

Looking to those federal authorities, we find the leading case to be *Tozer v. Charles A. Krause Milling Co.*, 189 F. 2d 242 (3rd Cir., 1951). The court there set out the prevailing federal view:

"What is excusable neglect and what is inexclusable neglect can hardly be determined in a vacuum. . . . The recent cases applying Rule 60 (*b*) have uniformly held that it must be given a liberal construction. Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. [Citation omitted.] Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. [Citations omitted.] Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments." (Id. p. 245.)

The court in that case also recognized that, when a party seeks to set aside a default judgment, the relief he is seeking is equitable in nature and "it is proper for the court to consider whether any prejudice will result to plaintiff if the judgment is set aside." (Id., p. 246.)

In that case the suit papers had been forwarded by the secretary of the commonwealth to the corporate defendant's registered agent in accordance with the applicable Pennsylvania statute. However, the agent had moved without notifying the secretary, and the papers were returned. Default judgment was entered without any actual notice to the corporate defendant. The appellate court found an abuse of discretion in the trial court's refusal to vacate the judgment, even though "the entry of the default judgment was the result of defendant's laxity in the conduct of its business." (Ibid.)

A similar theme runs through all the federal cases, a few of which will be sufficient to illustrate the point. In *Tolson v. Hodge*, 411 F. 2d 123 (4th Cir., 1969), plaintiff brought suit for injuries arising out of an automobile accident, employing counsel unconnected with his liability insurance carrier. The defendant counterclaimed, and counsel got in touch with plaintiff's insurance company. Before the question of plaintiff's representation on the counterclaim was resolved the reply time expired and a default was entered, which eventually matured into a default judgment. Plaintiff's motion for relief under Rules 55 (*c*) and 60 (*b*) was denied.

The court there first noted that "Nothing in the record suggests that plaintiff himself was in any way responsible for the failure to reply to the counterclaim within the time provided by the rules. If there was any neglect, it occurred on the part of either plaintiff's attorney or his insurance company. . . ." (Id., p. 129.) After reviewing the universal principle of liberal construction enunciated in the cases, including *Tozer*, discussed above, it took particular

note of those holding that the rules are a vehicle for affording relief to a litigant from the impact of his counsel's neglect. It concluded:

"We are in agreement with the authorities which we have cited, and to us they indicate that the *shortness of the delay involved,* the *absence of gross neglect* on the part of the plaintiff, *the lack of prejudice* to defendant, and the assertion of what may be a meritorius defense, collectively establish that there was an abuse of discretion on the part of the district judge in not relieving plaintiff of the default judgment and in permitting a response to the counter-claim out of time. Under all the circumstances, the interests of justice will best be served by a trial on the merits." (*Id.,* p. 130. Emphasis added.)

The case, together with those cited therein, illustrates that a litigant should not be unnecessarily penalized for the simple neglect of his agent—in that case his counsel. See, also, *Henry v. Metropolitan Life Ins. Co.,* 3 F. R. D. 142 (W. D. Va., 1942); *Ellington v. Milne,* 14 F. R. D. 241 (E. D. N. C., 1953); and *Trueblood v. Grayson Shops of Tennessee, Inc.,* 32 F. R. D. 190 (E. D. Va., 1963).

The same concept has been applied to neglect on the part of the litigant himself, as in *Schartner v. Copeland,* 59 F. R. D. 653 (M. D. Pa., 1973). There three of six individual defendants in a convict's civil rights action defaulted for one reason or another, although each had been duly served with the summons and complaint. Each acted on the assumption that the matter would be taken care of by the authorities, based on wholly unwarranted assurances of third parties. Two of them relied on the police department by whom they were employed at the time of plaintiff's arrest and the third, a civilian, on the district attorney who had prosecuted. Each sought relief from the default under Rule 55 (*c*). The court noted first that "Courts look upon default judgments with disfavor, and therefore, motions to set aside default judgments are considered liberally." (Id., p. 656.) The court went on to say: "In particular, a Rule 55 (*c*) motion may be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of *inexcusable neglect or a willful act.* Tozer v. Charles A. Krause Milling Co., *supra.* See generally Wright and Miller, Federal Practice and Procedure, § 2696." (Ibid. Emphasis added.)

As to the case before it, the court concluded: "Whether the Defendants' neglect was inexcusable is a close question. *Any doubt should be resolved in favor of setting aside the entry of default.* Tozer v. Charles A. Krause Milling Co., *supra.* Therefore, I find

that the default of the Defendants was not the result of *inexcusable neglect*." (Id., p. 657. Emphasis added.)

It may be observed that despite the wording of the rule the federal courts will refuse relief only where the neglect can be branded as "inexcusable." Such terminology is closely akin to our own phrase "reckless indifference." (*Reliance Insurance Companies v. Thompson-Hayward Chemical Co.*, supra, and cases cited therein.) It implies something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind. See, also, *Rooks v. American Brass Company*, 263 F. 2d 166 (6th Cir., 1959); *Erick Rios Bridoux v. Eastern Air Lines*, 214 F. 2d 207 (D. C. Cir., 1954); *Plumley v. May*, 140 W. Va. 889, 87 S. E. 2d 282; and *Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 409 P. 2d 285.

Applying the foregoing principles to the case at bar, we believe the exercise of sound judicial discretion required the setting aside of the judgment. Factors which lead us to that conclusion include the following: (1) While Nyland's action was neglectful, it can hardly be said to amount to "reckless indifference;" certainly there appeared no element of willfulness. (2) None of the principals, nor anyone else connected wth the defendant with responsibility for such matters, had any actual knowledge of the suit; they cannot be charged with neglect of any knd. (3) When knowledge of the suit was acquired, the defendant moved promptly (within 12 days). (4) The motion was filed within a "reasonable time" of the judgment; the three months lapse was well within the one year limit of the statute. (5) Mrs. Montez could show no prejudice from setting aside the judgment except that she would be required to prove her case. (It should be noted that plaintiffs make no contention that the tendered defense on causation and contributory negligence is not "meritorious.")

When the trial court was presented with defendant's motion, "Any doubt should be resolved in favor of the petition to set aside the judgment. . . ." (*Tozer*, supra.) Instead, it appears that all doubts were resolved in favor of sustaining the judgment. While there is a need to achieve finality in litigation, judicial discretion must not achieve that end in disregard of "what is right and equitable under the circumstances." (*Atchison, Topeka and Santa Fe Railway Co. v. Jackson*, 235 F. 2d 390, 393, quoted with approval in *Tilley v. International Harvester Co.*, 208 Kan. 75, 78-9, 490 P. 2d

392.) It appears to us that justice in this case demands a trial on the merits.

Accordingly the judgment is reversed and the case is remanded with directions to grant the motion to vacate and permit the defendant to file its answer, and for further proceedings in harmony with this opinion.

APPROVED BY THE COURT.