(660 P.2d 569)

No. 54,369

MID KANSAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF WICHITA, KANSAS, *Plaintiff,* and CALDWELL AND ASSOCIATES, INC., *Appellant,* v. JAMES R. BURKE and CAROLE J. BURKE, *Appellees,* and BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Defendant.*

Opinion filed March 17, 1983.

*Patrick L. Dougherty, Harry W. Saums,* and *John Callahan,* of Wichita, for the appellant.

*Phillip Mellor, Arden P. Miller, Mark Mellor,* and *James R. Schaefer,* of Wichita, for the appellees.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by Caldwell and Associates, Inc. (Caldwell), from the order of the District Court of Sedgwick County sustaining defendant Carole J. Burke's motion to set aside a sheriff's sale on the ground that personal service was never obtained upon her in the foreclosure action.

Defendant Carole J. Burke and her husband, James R. Burke, defaulted on a loan with Mid Kansas Federal Savings and Loan Association of Wichita. The Burkes assumed the $22,000 note on June 30, 1980, when purchasing their home. The note was secured by a first mortgage on the home. Mid Kansas subsequently commenced foreclosure proceedings. The sheriff's return indicates that a deputy went to the parties' residence on May 2, 1981, and handed the summons and a copy of the petition to James Burke as service of process upon him, and then handed him a summons and a copy of the petition as service of process upon his wife Carole J. Burke. Neither party answered the foreclosure petition.

On June 23, 1981, the trial court granted default judgment on the petition. The journal entry, filed on June 24, 1981, indicates that the court found that it had jurisdiction over the parties and over the subject matter of the action. Personal judgment was rendered against the Burkes with an order that if it were not timely paid, the real estate was to be sold at public auction by the sheriff.

The judgment was not paid, and the sheriff proceeded to advertise and conducted a sale on August 12, 1981. The successful bidder was appellant Caldwell with a bid of $23,900 for the house which, one of Carole Burke's witnesses testified, was valued at $74,000. A journal entry of confirmation was filed August 18, 1981, and the redemption period was fixed at six months.

The redemption period expired February 12, 1982. On February 23, 1982, a writ of assistance was issued. On March 8, 1982, Carole Burke filed her motion to vacate pursuant to K.S.A. 60-255(b) and 60-260(b). A stay on the writ of assistance was subsequently obtained.

On March 17, 1982, the motion to vacate was heard. Carole Burke maintained that personal service of process had not been obtained over her in the foreclosure action, and that she was never notified of the proceedings and therefore was denied the opportunity to be represented and protect her interest in this matter. Her basis for the claim of improper service is that her husband had a drinking problem and therefore was not a person of suitable discretion to leave her service with. According to Carole Burke's testimony, her first knowledge of the foreclosure

proceeding was the service of the writ of assistance. She further testified that up until that point, she had assumed that her husband was making the mortgage payments.

The trial court found that no personal service of summons was had upon Carole Burke in this matter, and that the service of summons had upon Mrs. Burke by leaving a copy thereof with her husband James Burke did not comply with the provisions of K.S.A. 1982 Supp. 60-304(a) in that Mr. Burke was not a person of suitable discretion. The court then found:

"As to defendant, Carole J. Burke, all proceedings subsequent to and including the Journal Entry of Judgment herein should be set aside upon condition that the defendant pay to the Clerk of the District Court of Sedgwick County, Kansas, the sum of $26,152.84, as reimbursement to Caldwell & Associates, Inc., for the sum paid by it at the sale, and for funds advanced to pay an insurance policy, and including interest thereon at the rate of 15% per annum."

Caldwell appeals, raising the following issues: (1) Whether the trial court was without jurisdiction to grant the relief requested in defendant's motion to vacate since the motion was made after redemption rights had expired; (2) whether the trial court erred in finding that proper service of process was never made on Carole J. Burke; and (3) whether the trial court's decision, as set forth in its journal entry, has a discernible meaning and practical application.

Appellant Caldwell first contends that the trial court was without jurisdiction to entertain defendant's motion to vacate since the period of redemption had passed. For support of its position, Caldwell relies primarily upon the decision in *Needham v. Young*, 205 Kan. 603, 470 P.2d 762 (1970). In *Needham*, the plaintiff argued that the trial court erred in vacating an execution sale of real estate for the reason defendant's motion was not timely made. The court disagreed and stated:

"The sale was held on October 17, 1967. The order vacating the sale was entered December 4, 1968. This was less than fourteen months after the sale and well within the eighteen month period of redemption set by the court.

"K.S.A. 60-260(b) authorizes a court on motion and upon such terms as are just to relieve a party from a final judgment, order or proceeding. The bases for such a motion are listed in the statute. The sixth basis listed is for any reason justifying relief from the operation of the judgment, order or proceeding. The time specified in the statute for filing such a motion is 'a reasonable time'. A reasonable time is not a precise period such as the one year limitation specifically placed on motions filed for reasons (1), (2) and (3) in this statute. Judicial discretion is indicated when the time specified by statute merely has to be reasonable.

"*When real estate is sold on execution and a period of redemption fixed under the provisions of K.S.A. 60-2414 a motion to set aside the sale proceedings is within a reasonable time as required by K.S.A. 60-260(b)(6) if it is filed during the period of redemption set by the court.* To hold otherwise would be to disregard the purposes of the redemption statute which is to prevent hardship and inequity." pp. 605-6. (Emphasis supplied.)

Caldwell maintains that *Needham* stands for the proposition that a motion to vacate made after the period of redemption is not made within a reasonable time.

We find Caldwell's argument to be without merit. K.S.A. 60-260(*b*) provides: "The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken." While the period set for redemption is a proper factor to consider when determining whether or not a motion to set aside the sale proceedings is made within a reasonable time, it is not a conclusive factor. In *Needham* the defendant had an eighteen-month period of redemption. In the present case, the defendants had a six-month period of redemption. Carole Burke filed her motion to vacate under 60-255(*b*) and 60-260(*b*) well within the one year maximum provision of 60-260(*b*), and certainly within a reasonable period. See also *Barkley v. Toland,* 7 Kan. App. 2d 625, 646 P.2d 1124, *rev. denied* 231 Kan. 799 (1982), for motion to vacate default judgment based on improper and ineffective service of process. We therefore find that the trial court did have proper jurisdiction to consider Carole Burke's motion, regardless of under which section of 60-260(*b*) she may have proceeded.

Caldwell next contends that the trial court erred in finding that proper service of process was never made on Carole Burke. K.S.A. 1982 Supp. 60-304 provides in part:

"Service shall be made as follows:

"(*a*) *Individual.* Upon an individual rather than a minor or an incapacitated person, by delivering a copy of the summons and of the petition to the individual personally or by leaving copies thereof at such individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ."

The key issue is whether James Burke was a person of "suitable discretion" so as to make the service upon him of Carole Burke's summons proper service upon Carole. The trial court found that James Burke was not such a person of suitable discretion. When a decision is attacked for sufficiency of the evidence, the duty of

the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, Syl. ¶ 8, 639 P.2d 29 (1982). Upon appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings in the trial court, and disregards any conflicting evidence or other inferences which may be drawn therefrom. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, Syl. ¶ 2, 624 P.2d 420 (1981).

At the hearing on this matter, defendant presented three witnesses: herself, James E. Atherton, and her son Robert Burke. Atherton is a real estate sales agent who had been an appraiser in the real estate business for about twenty years. His testimony consisted of his appraisal of the subject property made for this hearing. Robert Burke, age eighteen, was called to testify as to what occurred immediately after his mother received the writ of assistance. He stated that his mother became hysterical upon receiving the writ and prior to then knew nothing of the foreclosure action. She became so upset, Robert testified, that she had to have him read to her the complete document.

The only witness who really touched upon the issue of James Burke's character at the time of receiving the original summons was Carole Burke. Mrs. Burke's testimony was that James Burke and she were husband and wife and that they were the parents of three children, all of whom still resided in the family home; that both she and her husband were regularly employed and, through the years, her husband was totally responsible for opening all mail and paying all household expenses. She testified that she paid out of her earnings the children's school expenses and whatever additional allowance monies they needed. The only conclusion that could be drawn from this testimony is that through the many years of marriage this was a satisfactory arrangement between husband and wife, and that Carole Burke never had reason to be concerned about her husband fulfilling these obligations regarding the family finances. The only testimony to the contrary was provided by Mrs. Burke on direct examination, and is as follows:

"Q  And now, I want to ask you this, I know it's a little bit painful to you, but does your husband have a problem?

"A  Yes.

"Q  A drinking problem?

"A  Yes.

"Q  In fact, you discovered that he had not been paying the bills, including the house payment?

"A  I had no idea.

"Q  That was the first knowledge you had that the house payments had not been made?

"A  Yes."

Earlier in the day the writ of assistance was served, Mrs. Burke was visited by a representative of the electric company who was going to shut off the electricity. Apparently Mr. Burke had also allowed that bill to get in arrears, totaling over $700. These are the only obligations that were mentioned as being delinquent.

The court did not hear any evidence from James Burke or from the deputy who made the original service. It is not known whether Burke was drunk at the time of the service (9:12 a.m.), or when he was later contacted by a representative of Caldwell's relative to the Burkes' intention to exercise their right of redemption. It is known that James Burke was steadily employed at that time by A.D.P., Auto Damage & Press.

Whether the trial court had sufficient competent evidence to find that James Burke was not a person of suitable discretion at the time of service is the ultimate question presented here on review. The crucial fact missing from the proof on this matter is Mr. Burke's state of mind at the time of the service. If, at 9:12 a.m. that morning, Mr. Burke was not inebriated, then the deputy would be justified in leaving Mrs. Burke's summons with him. The nature of Mr. Burke's problem is such that it is most generally an intermittent condition. If he was holding down a job at that point, one could only assume that he had lucid and sober moments. The problem with the evidence presented to the trial court is that it does not go into this aspect of Mr. Burke's character. Consequently, we must find, after carefully examining the record, that the trial court's conclusion that James Burke was not a person of suitable discretion for purposes of residential service pursuant to K.S.A. 1982 Supp. 60-304(a) is not supported by sufficient competent evidence.

We further find that when all the testimony is considered, the equities of the court should not be invoked where the facts do not show that Carole Burke exercised any degree of normal or

reasonable concern or care about her family's financial matters when she, according to her own testimony, knew her husband was suffering and had been suffering from a "drinking problem." Such conduct could only be characterized as inexcusable neglect, and therefore would preempt any motion to vacate the default judgment framed under 60-260(*b*)(1) or (6) since such a motion may be granted only when a court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act. *Montez v. Tonkawa Village Apartments,* 215 Kan. 59, 523 P.2d 351 (1974).

Caldwell's final issue on appeal concerning the construction of the trial court's journal entry is moot in light of this court's decision on the above two issues.

Reversed.

FOTH, C.J., dissenting: I agree with my colleagues that the evidence concerning Mr. Burke's general or specific mental state does not support an inference that he lacked "suitable discretion" for the purpose of accepting residential service on his wife. Hence the case must be dealt with on the assumption that Mrs. Burke was properly served but defaulted.

In dealing with the 60-260(*b*) aspects of her motion the majority finds she is precluded from relief because of her "inexcusable neglect." This conclusion is apparently based only on her willingness to entrust the family's financial affairs to a husband who is known to have a drinking problem. There are in my opinion two things wrong with this analysis:

First, I am not prepared to say Mrs. Burke's acquiescence in a long-standing allocation of family responsibilities was "inexcusable." There is nothing to indicate Mr. Burke had ever failed to carry out his part of the arrangement before. Certainly there is no evidence Mrs. Burke *knew* of any delinquency before the day the two messengers arrived, one to shut off the lights and the other to put her out in the street.

Second, and more important, I read the cases treating with excusable versus inexcusable neglect as referring to neglect *of the lawsuit* in question. See *Jenkins v. Arnold,* 223 Kan. 298, 573 P.2d 1013 (1978), and cases cited therein. Mrs. Burke cannot be accused of neglecting this lawsuit; the evidence is undisputed

that the first she heard of it was when the deputy arrived with the writ of assistance. She immediately sought counsel and promptly filed her motion for relief.

It has often been stated that a motion under 60-260(*b*) is addressed to the sound discretion of the trial judge, who should have "due regard for what is just and fair under existing circumstances." *Jenkins*, 223 Kan. at 299, and cases cited. In this case Mrs. Burke did not seek relief from the foreclosure, but only from the sale to the appellant (of which she had been equally unaware). She tendered, and the court ordered, repayment of the purchase price in full, interest at the market rate, and reimbursement of all expenses. Under the court's order the purchaser would lose only the chance to make a speculative profit, while Mrs. Burke would be able to retain her home for herself and her children, and would avoid forfeiting her substantial equity in it.

It seems apparent to me the trial court in this case was swayed by the equities of the case, which were all one way, and seized upon the alleged process deficiency as a method of achieving a result which was "just and fair under existing circumstances." Although I can't agree with the procedural channel utilized, I believe the court arrived at the correct destination. I certainly, can find no abuse of discretion and would therefore affirm.