No. 105,982

STATE OF KANSAS, *Appellee*, v. JOSEPH M. BUSER, *Appellant*.

ORDER

This is a criminal appeal. On March 26, 2015, Joseph Buser's defense counsel, Meryl Carver-Allmond, filed a Motion to Find Mandatory Application of K.S.A. 2014 Supp. 20-3301 Unconstitutional. The State filed no response to the motion and no motion for extension of time to respond. After hearing nothing from the State in the 3 months following the filing of the motion, we analyzed the issues presented and granted the motion in an order dated July 1, 2015. We held subsection (c) of the statute was unconstitutional and relieved Carver-Allmond of any purported duty to comply with its commands. *State v. Buser*, 302 Kan. 1, 2015 WL 4646663.

In our July 1 Order we described the statute and its goal:

"Generally speaking, K.S.A. 2014 Supp. 20-3301 imposes deadlines for all state court decisions. In the context of this case, the statute's first step is to direct all counsel after those deadlines have run to submit a joint request to the Supreme Court that a decision be entered "without further delay." See K.S.A. 20-3301(c)(2). We recognize and echo the statute's spirit, which aims to promote prompt judicial decisions."

On July 14, 2015, the Attorney General filed an entry of appearance. He also filed on behalf of the State a self-styled "Motion for the Withdrawal of this Court's Order Declaring K.S.A. 2014 Supp. 20-3301(c) Unconstitutional to Permit Intervention by the Office of the Kansas Attorney General to Defend the Statute." Carver-Allmond has filed a timely response.

For the reasons explained below, we deny the State's motion.

ANALYSIS

The Attorney General makes a number of arguments in support of his motion. Our analysis of the merits of those arguments necessarily includes consideration of the following *concessions* in his motion:

1. Carver-Allmond's motion of March 26 was properly served upon the Mitchell County Attorney, who was handling the defense of Buser's appeal for the State. (Attorney General's Motion at 2.)

2. The Attorney General was not aware of Carver-Allmond's motion until after our July 1 Order had been entered. (Attorney General's Motion at 2.)

Our analysis also necessarily includes consideration of the following *assertion* by the Attorney General: After receipt of Carver-Allmond's motion, "the Mitchell County Attorney's Office . . . did not contact the Attorney General because it was under the seemingly mistaken impression that all filings were served on the Attorney General under this Court's Rules and common practice." (Attorney General's Motion at 2.)

Finally, our analysis must include consideration of several undisputed matters:

1. Supreme Court Rule 5.01(c) (2014 Kan. Ct. R. Annot. 34) provides: "A party may serve and file a response . . . not later than 7 days after being served with a motion," and Rule 5.01(d) provides that an extension not exceeding 20 days may be granted by the clerk or court. In addition, Rule 5.02(c) (2014 Kan. Ct. R. Annot. 35) provides that "[a] motion for an extension of time filed after the time to act has expired must state the reasons constituting excusable neglect." In this case, the County Attorney has never filed a response, nor has he sought an extension of time to do so.

2. The appellate record contains no evidence of the County Attorney's withdrawal from his representation of the State. See Rule 1.09(c) (2014 Kan. Ct. R. Annot. 8) (any attorney who has appeared of record in an appellate proceeding may withdraw when the client continues to be represented by other counsel of record but only after the attorney serves a notice for withdrawal on all parties and files a copy of the notice with the clerk of the appellate courts).

3. The appellate record contains no evidence that the Attorney General notified the Mitchell County Attorney of this Motion for Withdrawal of our Order and to Intervene. Nor does the appellate record contain any response by the County Attorney to this motion.

4. The appellate record contains no evidence of any reaction by the County Attorney to Carver-Allmond's response to the Attorney General's motion, although Carver-Allmond's certificate of

service shows that she mailed the County Attorney a copy of her response.

*The Court will not set aside its order under K.S.A. 60-260 to permit additional briefing on the constitutionality of the statute.*

On behalf of the State, the Attorney General argues this court should withdraw its order based on "surprise, excusable neglect, or any other reason justifying relief" under K.S.A. 60-260(b). That statute provides in pertinent part:

"(b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment."

### Excusable neglect

Among the particular grounds identified in subsection (b)(1), the Attorney General specifically relies only on excusable neglect: "[T]he failure of the County Attorney to relay to the Attorney General notice that a constitutional challenge to a statute had been raised should constitute 'excusable neglect' within the meaning of K.S.A. 60-260." (Attorney General's Motion at 3.) Carver-Allmond responds with numerous reasons for rejecting its existence.

Initially, Carver-Allmond argues that it was not excusable neglect for the County Attorney to fail to forward her motion to the Attorney General because even a glance at its certificate of service clearly would have informed him that she had not served a copy of the motion on the Attorney General.

Carver-Allmond also argues that if any failure to read or grasp the significance of her motion's certificate of service was somehow excusable, the County Attorney's continuing neglect was not. When, after 3 months, the Attorney General took no action to respond to a motion the County Attorney allegedly, and mistakenly, believed to have been served on the Attorney General, then the County Attorney should have acted. In Carver-Allmond's view, the County Attorney either should have contacted the Attorney General to investigate the silence or he should have responded to the motion himself on behalf of the State. Such a response would have

been contingent on a successful motion for extension of time to respond. See Rule 5.02(c) (requiring excusable neglect). But even that was not attempted.

We begin our analysis of the Attorney General's pending motion by acknowledging that the burden of establishing excusable neglect under K.S.A. 60-260(b)(1) is the State's. See *Canaan v. Bartee*, 272 Kan. 720, 733, 35 P.3d 841 (2001) (A party claiming excusable neglect has the burden to plead and prove its claim.). In addition, for neglect to be excusable under the statute, it must be more than inadvertent neglect but less than a willful act. See *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 407, 532 P.2d 1276 (1975) ("[i]nadvertent neglect . . . is not to be equated with excusable neglect"); see also *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 173, 61 P.3d 687 (2003) (quoting *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 64, 523 P.2d 351 [1974]) (noting a judgment may not be set aside when default was result of inexcusable neglect or willful act).

The Attorney General's sole excuse for the State neglecting to respond to Carver-Allmond's motion is succinct. He simply asserts the Mitchell County Attorney's office "did not contact the Attorney General because it was under the seemingly mistaken impression that all filings were served on the Attorney General under this Court's Rules and common practice." (Attorney General's Motion at 2.) No affidavit has been provided to support this assertion and there is no evidence elsewhere in the record to support it. Moreover, the County Attorney has not signed or joined the Attorney General's motion—even though he remains an attorney of record for the State. *Cf. Tyler*, 216 Kan. at 407 (explanation of excusable neglect cannot be supported by affidavit of someone who lacks personal knowledge of the facts); *Lackey v. Medora Township*, 194 Kan. 794, Syl. 1, 401 P.2d 911 (1965) ("[I]f mistake or inadvertency forms the basis for the motion, the movant should make *some showing* as to why he was justified in failing to avoid the mistake or inadvertency.") (Emphasis added.); *Garcia v. Ball*, 50 Kan. App. 2d 197, 204, 323 P.3d 872 (2014) (attorney "guessing" why client failed to respond to suit is not sufficient to support assertion of

excusable neglect; guess is neither a statement of what the neglect was nor a provision of evidentiary basis).

With no facts in the record to support the excuse offered by the Attorney General for the State's failure to timely respond to her motion, Carver-Allmond offers an equally plausible possibility for why the County Attorney took no action when the Attorney General failed to respond. She contends he was in agreement with other county and district attorneys who have chosen not to comply with K.S.A. 2014 Supp. 20-3301. We noted this phenomenon in our July 1 Order: "Like Carver-Allmond, appellate counsel in other cases have resisted compliance with this statute." 302 Kan. at 3, 2015 WL 4646663, at *2. According to an exhibit attached to Carver-Allmond's response which summarizes the results of reviewing this court's docket and case inquiry system, no motions were filed in cases including "the Attorney General (1) and the following county attorneys: Sedgwick (2), Shawnee (2), Riley (1), Saline (1), and Pottawatomie (1)." (Carver-Allmond's Response at Attachment B.) Indeed, Carver-Allmond argues that, based upon her exhibit, the "more likely" reason for the County Attorney not acting was his intentional decision not to oppose her motion. (Carver-Allmond's Response at 8.) This interpretation of events is buttressed by the County Attorney's ongoing failure to take advantage of several opportunities—not only to file any documents once briefs were submitted in 2013 but also to support the Attorney General's current motion for the State.

Having said all of this, even if we grant the benefit of all of these doubts to the Attorney General, *i.e.*, that we assume his assertion about the Mitchell County Attorney's "seemingly mistaken impression" is based on fact and not guesses, excusable neglect is not present. Relief on this ground must be denied because the failure of a lawyer to know the rules—here, the County Attorney's mistaken belief concerning the service of filings on the Attorney General—would not constitute excusable neglect.

Federal courts interpreting and applying a United States Code provision comparable to our K.S.A. 60-260(b)(1) are virtually unanimous on this point. See, *e.g.*, *Peake v. First Nat. Bank & Trust*, 101 F.R.D 544, 547 (W.D. MI 1984) (Federal courts are practically

unanimous in holding that a conscious decision made by an attorney based upon ignorance of the law is not "excusable neglect."). These opinions can be persuasive authority for this court. See *Ternes v. Galichia*, 297 Kan. 918, 921, 305 P.3d 617 (2013) (when Kansas procedural statute is patterned after corresponding federal rule, federal decisions interpreting federal rule may serve as persuasive guidance for interpreting and applying Kansas statute). The Fifth Circuit Court of Appeals has expressly held:

"[A] court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one *attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court*." (Emphasis added.) *In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005).

Decisions from several of our sister states are consistent with the dominant federal court outcome and analysis of this question. See, *e.g.*, *Pogia v. Ramos*, 10 Haw. App. 411, 416, 876 P.2d 1342 (1994) (quoting *Swimmer v. Internal Revenue Service*, 811 F.2d 1343, 1345 [9th Cir. 1987]) (" 'Ignorance of court rules does not constitute excusable neglect.' "); *Whitefish Credit Union v. Sherman*, 2012 MT 267, ¶ 20, 367 Mont. 103, 109, 289 P.3d 174 (2012). ("Excusable neglect requires some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney.")

The sole exception to unanimity on this issue appears to be the District of Columbia Court of Appeals in Washington, D.C. See *Household Finance Corp. v. Frye*, 445 A.2d 991, 993 (D.C. App. 1982).

Accordingly, we conclude that the Attorney General has not met the burden of showing excusable neglect as a justification for withdrawal of our July 1 Order. See *Canaan v. Bartee*, 272 Kan. at 733.

*Surprise*

The Attorney General next cites "surprise" as a recognized basis for granting the State relief under K.S.A. 60-260(b)(1). But his explanation for how he meets this standard appears to be limited to the following: "Because the Attorney General was never served with the motion (or order) or otherwise asked to intervene to defend the constitutionality of the statute, the Attorney General was

unable to defend the constitutionality of the statute prior to the order being issued on July 1, 2015." (Attorney General's Motion at 3.)

Carver-Allmond initially responds by pointing out that "surprise," as that term is used in K.S.A. 60-260(b), is defined as " 'some condition or situation in which a party to an action is unexpectedly placed to his injury, *without any default or negligence of his own, and which ordinary prudence could not have guarded against.*' " (Carver-Allmond's Response at 4) (quoting *Mid Kansas Fed'l Savings & Loan Ass'n v. Burke*, 233 Kan. 796, 799, 666 P.2d 203 [1983]) (emphasis added by Carver-Allmond).

Carver-Allmond then argues that the Attorney General was aware of the issue of K.S.A. 2014 Supp. 20-3301's constitutionality, or should have obtained notice of it through prior events. As support, she attaches to her response a copy of e-mail traffic between an Attorney General representative and another attorney in her office. In a March 27 email—sent 1 day after Carver-Allmond's motion had been filed—counsel advised the Attorney General's representative that "I think our Court has been asked in another case to clarify our duties under this statute, which would be important to know." Counsel also advised he was not going to sign the joint motion for a court decision under K.S.A. 2014 Supp. 20-3301 which the representative had prepared, stating, "I'm not going to join the motion at this time." (Carver-Allmond's Response at Attachment D.) That same day the Attorney General's representative filed a self-styled "Notice of Inability to Comply With K.S.A. 2014 Supp. 20-3301."

As noted, our Order granting Carver-Allmond's motion was not filed until July 1. This was more than 3 months after the March 26 motion and the email exchange. Carver-Allmond additionally points out that the Attorney General's office also had been prevented from filing a statutory joint request for decision by a lack of cooperation from appellate defense counsel which led the office to file "notices of inability to comply" in three other cases before July 1. Each notice provided that other counsel "declined to agree to the filing of a joint request."

She attaches to her response an exhibit summarizing these cases gleaned from a review of this court's docket and case inquiry system. As mentioned, this same exhibit also discloses that the Attorney General's office itself—on one appellate case—did not file any motion concerning the statute. It additionally reveals that such motions had not been filed by five different district attorney and county attorney offices in a total of eight appellate cases.

According to Carver-Allmond, this information establishes "the reluctance of the appellate bar to comply with what many believed to be an unconstitutional statute." (Carver-Allmond's Response at 5.) These materials clearly demonstrate the Attorney General's office should have been aware that the issue of the statute's constitutionality was brewing well before the Court's July 1 Order.

Combining all of these circumstances, we cannot conclude that the State—despite the Attorney General's opportunity to persuade us—has met its burden of showing surprise by Carver-Allmond's motion and our resultant order. See *Mid Kansas Fed'l Savings & Loan Ass'n*, 233 Kan. at 799 (defining surprise); *Canaan v. Bartee*, 272 Kan. at 733.

### *"Any other reason justifying relief"*

### *Fairness and public policy*

Apparently relying upon the "any other reason justifying relief" language in K.S.A. 60-260(b)(6), the Attorney General contends that fairness and public policy concerns require an opportunity for him to intervene before a statute is found unconstitutional. (Attorney General's Motion at 3.) He argues that two statutes suggest a notice requirement: "[T]he Legislature has implicitly made clear as a matter of public policy that it wishes the Attorney General to be notified when a statute it has enacted is attacked as unconstitutional so that the state statute might be afforded a defense by the State's chief legal officer." (Attorney General's Motion at 5.)

The first statute upon which the Attorney General relies, K.S.A. 2014 Supp. 60-224(b)(2)(B), provides in relevant part:

"When the validity of an ordinance, regulation, statute or constitutional provision of this state or a governmental subdivision of this state is drawn in question in any action to which the state or governmental subdivision or an officer, agency or

employee thereof is not a party, the court may notify the chief legal officer of the state or its subdivision, and permit intervention on proper application."

Carver-Allmond correctly points out that eligibility for intervention by the Attorney General exists only when the State or its officer, agency, or employee is *not* a party. The State clearly was already a party when she filed her motion on March 26.

The second statute upon which the Attorney General relies, K.S.A. 2014 Supp. 75-702, provides in relevant part:

"The attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings . . . in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense. The attorney general shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend . . . in any cause or matter . . . in which this state may be a party or interested or when the constitutionality of any law of this state is at issue, and when so directed shall seek final resolution of such issue in the supreme court of the state of Kansas."

Among other things, Carver-Allmond points out that K.S.A. 2014 Supp. 75-702 is silent on the entire issue of notice—whether mandatory or permissive. She emphasizes that an appellate court merely interprets the language as it appears, *i.e.*, "it is not free to speculate and cannot read into the statute language not readily found there." *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, Syl. 3, 218 P.3d 400 (2009).

Simply put, from the two statutes relied upon by the Attorney General, we cannot conclude that the legislature intended for the Attorney General to be notified by any person, party, or entity under the circumstances of this case, *i.e.*, when the State was already represented by the County Attorney. We have provided the Attorney General an opportunity to show this court that our July 1 Order should be withdrawn on the basis identified in K.S.A. 60-260(b)(6) ("any other reason justifying relief"). But we conclude he has not met his burden to do so. See *Canaan v. Bartee*, 272 Kan. at 733.

### Presumption of constitutionality

The Attorney General also reminds us that a statute is presumed constitutional and that before the act may be struck down it must

clearly appear that the statute violates the constitution. (Attorney General's Motion at 7) (citing *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 [2006]). He argues it is therefore "difficult to see how the Court can do so without any defense of the statute." (Attorney General's Motion at 7.)

Carver-Allmond does not respond to the issue of presumption of constitutionality except to contend:

"In its July 1st order, this Court researched and wrote a thorough, seventeen page opinion finding K.S.A. 20-3301 unconstitutional. As the order makes clear, this Court considered the issue on the merits. It did not rule for Mr. Buser *because* the State did not file a response. It ruled for Mr. Buser and *additionally* found that the State did not respond." (Carver-Allmond's Response at 11.)

We generally agree with Carver-Allmond. The State's failure to respond to her motion did not determine the outcome. We fully analyzed the constitutionality issue before making our decision, consistent with our previous statement that an "unopposed motion may not be granted unless the court is satisfied that the legal standards for granting the motion have been met." *State v. Davis*, 281 Kan. 169, Syl. ¶ 4, 130 P.3d 69 (2006), *disapproved on other grounds by State v. Ford*, 302 Kan. 455, 353 P.3d 1143 (2015).

In further response to the Attorney General's argument, Carver-Allmond also argues a related issue. She contends that the Attorney General's motion fails to meet yet another required element for relief under our caselaw interpreting K.S.A. 60-260. Specifically, she points out we have held that the moving party must show it " 'has a meritorious defense.' " *Alivio*, 275 Kan. at 172-73 (quoting *Montez*, 215 Kan. at 64 and citing *Jenkins v. Arnold*, 223 Kan. 298, 301, 573 P.2d 1013 [1978]) ("[t]he trouble with the defendant's position is that . . . he failed to show that he had a meritorious defense to the action as required by our decision in *Montez*"). We agree with Carver-Allmond that an insufficient showing has been made.

Often, the moving party will provide the court a copy of its proposed brief or legal memorandum fully exploring its position on the merits, *i.e.*, establishing it has a meritorious defense. Short of that, the motion itself will fully explore its meritorious position. See *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28, 32 (2012) (movant bears

burden of proof on motion); Supreme Court Rule 5.01 (2014 Kan. Ct. R. Annot. 34) (appellate court motion "must state with particularity" ground for the motion); Black's Law Dictionary 1294 (10th ed. 2014) (defining "particularity" as "[t]he quality, state, or condition of being both reasonably detailed and exact"). Here, the Attorney General's repeated claims that he was denied the opportunity to argue the constitutionality of the statute is belied, or at least seriously undermined, by his failure to ever provide this court any meaningful argument on the statute's constitutionality. See *Jenkins*, 223 Kan. at 301.

As Carver-Allmond accurately points out, the Attorney General "vaguely hint[s] at 'alternative interpretations of the statute' without illuminating this Court or opposing counsel about what those could possibly be." (Carver-Allmond's Response at 12.) We conclude the Attorney General's brief assertion about the existence of unidentified alternative interpretations of the statute is insufficient to demonstrate a meritorious defense—an important consideration when determining whether to grant his request for withdrawal of our Order.

At most, the Attorney General contends that "the State *could have* analyzed whether K.S.A. 2014 Supp. 20-3301 was a directory or mandatory statute as there are no consequences for the noncompliance with the statute." (Emphasis added.) (Attorney General's Motion at 8.) He cites "*State v. Raschke*, 289 Kan. 911, 919-21, 219 P.3d 481 (2009) (setting forth one test to determine if 'shall' is mandatory or directory and noting that 'provisions governing order and timing of procedures are more likely to be directory only')." (Attorney General's Motion at 8.)

This sole contention, however, ignores our thorough discussion of the merits in our July 1 Order. There we twice specifically held that under the legislature's express language of K.S.A. 2014 Supp. 20-3301(c), the court is required—*i.e.*, mandated, not merely directed—to perform certain tasks. See, *e.g.*, 302 Kan. at 6, 2015 WL 4646663, at *4, 7 ("Supplying one of these remedies is 'required' of the court by subsection [c][4] [the alternative remedies 'as required by subsection (c)(3)].' "). "Mandatory" has been defined as

"[r]equired as if by mandate; obligatory." American Heritage Dictionary of the English Language 793 (1981).

Moreover, as we also pointed out, subsection (c) is replete with "shalls" and one "will"—for the attorneys, this court, and its chief justice. This frequency is important to any analysis because we have held "the context of a statutory scheme . . . is ultimately determinative" of the issue of whether shall is mandatory or directive. *Raschke*, 289 Kan. at 920.

Subsection(c) of 22-3301 provides:

"(1) The supreme court *shall* render and file its decision on motions and appeals within 180 days after the matter is submitted for decision." (Emphasis added.)

The statute proceeds to provide steps for counsel, and steps and consequences for the Court, if the Court does not comply with the provision of subsection (1):

"(2) If the supreme court does not enter and file its decision on a submitted matter within 180 days of submission, all counsel *shall*, within 190 days after the matter is submitted for decision, file with the court a joint request that such decision be entered without further delay. A copy of such request *shall* be sent to the chief justice and made available to the public.

"(3) Within 30 days after the filing of a joint request, the supreme court *shall* enter its decision or advise the parties in writing of the date by which the decision *will* be entered. A copy of such written advice *shall* be filed in the case, sent to the chief justice and made available to the public." (Emphasis added.)

The statute then continues to provide steps for counsel—and steps and consequences for the Court—if it or the chief justice does not comply with the parties' joint motion under subsection (2):

"(4) In the event the supreme court *fails* to enter its decision or to advise the parties of an intended decision date as required by subsection (c)(3), all counsel *shall* then file a joint request with the chief justice to establish an intended decision date. A copy of such request *shall* be filed in the case and made available to the public.

"(5) Upon receipt of a request under subsection (c)(4), the chief justice *shall*, after consultation with the justice or justices to whom the matter is assigned, establish a firm intended decision date by which the court's decision *shall* be made. Such setting of a final intended decision date *shall* be in writing, filed in the case, served on the parties and made available to the public." (Emphasis added.)

Finally, in our July 1 Order we acknowledged the legislative purpose of K.S.A. 2014 Supp. 20-3301 by saying the statute's spirit aimed "to promote prompt judicial decisions." 2015 WL 4646663, at * 1. Holding all of these statutory "shalls" to be merely directory, *i.e.*, that they could be disregarded without consequence, would be inconsistent with that legislative purpose. See, *e.g., Raschke*, 289 Kan. at 920 (citing *City of Kansas City v. Board of County Commissioners*, 213 Kan. 777, 783, 518 P.2d 403 [1974]) (" 'Generally in construing the effect of noncompliance with a statute, courts first inquire into the purpose behind the statutory provision.' "). Contrast *State v. Johnson*, 286 Kan. 824, 850-51, 190 P.3d 207 (2008) (after reviewing K.S.A. 21-4704[e][1] containing single use of the words "discretion" and "shall," held "shall" was directory, not mandatory—because the statutory provision also included clearly permissive language) (as discussed in *Raschke*, 289 Kan. at 921).

Consequently, we hold that the State has failed to establish this important consideration when determining whether relief from our Order is justified. While given full opportunity, the State has not shown it has a meritorious position on the statute's constitutionality. *Jenkins*, 223 Kan. at 301.

### *No prejudice to Buser by withdrawal*

The Attorney General argues that allowing him to submit "additional briefing in this case will not substantially impair Buser's rights." (Attorney General's Motion at 8.) While he does not explain why he raises this issue, he apparently does so because of our holding in *Alivio*. Carver-Allmond observes that in *Alivio* we held that a K.S.A. 60-260 motion to set aside a default judgment may be granted where the court can find that default was not the result of inexcusable neglect or a willful act, that the defaulting party has a meritorious defense—and " 'that the nondefaulting party will not be prejudiced by the reopening.' " *Alivio*, 275 Kan. at 172-73 (quoting *Montez*, 215 Kan. at 64). There we held that an appellant's failure to show all three of these *Montez* elements would doom his appeal. 275 Kan. at 174 (citing *Jenkins*, 223 Kan. at 301).

Addressing the Attorney General's contention about lack of substantial impairment to Buser's rights may be unnecessary in light of this Order's earlier holdings about the Attorney General's failure to show excusable neglect. See *Alivio*, 275 Kan. at 174 (holding neglect was not excusable eliminated the need to address lack of prejudice to nondefaulting party) (citing *Jenkins*, 223 Kan. at 301). We nevertheless consider his argument in order to address another issue of equal concern.

We begin our analysis of impairment to Buser's rights with Carver-Allmond's admission. Specifically, regardless of the outcome of Buser's direct appeal on whether the 2011 amendments to the Kansas Offender Registration Act (KORA) (K.S.A. 22-4901 *et seq.*) may be applied retroactively to his 2009 conviction, he will be required to register for at least 10 years. (Carver-Allmond March 26 Motion at 1). Accordingly, the Attorney General argues that any delay caused by our now allowing his office to provide additional briefing would not unfairly prejudice Buser's rights. (Attorney General's Motion at 8). Because our decision has not yet been released on the merits of the KORA issue, the Attorney General's argument has some attraction.

Carver-Allmond responds that Buser nevertheless still has a due process right to a timely direct appeal, citing *State v. Bussart-Savaloja*, 40 Kan. App. 2d 916, 920-21, 198 P.3d 163 (2008), *rev. denied* 288 Kan. 833 (2009). That due process right requires this court to take the time it reasonably needs to process his appeal, but no longer. She contends that re-litigating her March 26 motion prejudices those rights because the appeal will be delayed during the parties' rebriefing and our reconsideration of the merits. (Carver-Allmond Response at 13). We independently observe that if we were to release our decision on the merits of Buser's KORA appeal without finally ruling on Carver-Allmond's March 26 motion, her issue about the constitutionality of K.S.A. 2014 Supp. 20-3301 would arguably be moot.

But this focus on whether Buser's rights will be substantially impaired, while warranted by our caselaw on whether to set aside default judgments, overlooks a significant factor in our analysis. Simply put, our July 1 Order, unlike default judgments, does not

dispose of Buser's case on appeal—which concerns the retroactivity of the 2011 amendments to KORA. Rather, our Order disposes of an ancillary issue: whether K.S.A. 2014 Supp. 20-3301, and its reporting requirements for this court and counsel, is unconstitutional. See *State v. Buser*, 302 Kan. 1, 2015 WL 4646663, at *1 (statute's first step "is to direct all counsel after [deadlines for all state court decisions] have run to submit a joint request to the Supreme Court that a decision be entered 'without further delay.' See K.S.A. 2014 Supp. 20-3301[c][2]").

Consequently, the July 1 Order impacts attorneys like Carver-Allmond, the Mitchell County Attorney, the Attorney General, and all others whose cases would otherwise fit the requirements of K.S.A. 2014 Supp. 20-3301. Our Order acknowledged that appellate counsel in other cases have resisted compliance with the statute. (302 Kan. at 3, 2015 WL 4646663, at *2). Carver-Allmond's exhibit establishes that numerous attorneys were affected by the uncertainty that preceded our Order. By contrast, attorneys most assuredly have been affected by the certainty the Order expressed: subsections (c)(1), (2), and (3) of the statute are unconstitutional and counsel are relieved "of any purported duty to comply with subsection (c)(2)." 302 Kan. at 14, 2015 WL 4646663, at *10.

We have a responsibility to Kansas attorneys and their accompanying ethical obligations to inform them whether K.S.A. 2014 Supp. 20-3301 and the demands it places upon them are unconstitutional—or not. See 302 Kan. at 4, 2015 WL 4646663, at *3 (Supreme Court created the Kansas Rules of Professional Conduct pursuant to its longstanding and exclusive jurisdiction over attorney conduct). On July 1, we so informed them. We twice have given the Mitchell County Attorney, as counsel for the State, several months to weigh in by responding to motions on this subject. He has not done so. Accordingly, we will not reintroduce uncertainty and complication by allowing any further delay with additional briefing and reconsideration when the State, through either or both of its counsel, already had opportunities to adequately address the merits and failed to do so.

## CONCLUSION

On March 26 Carver-Allmond properly filed her motion on be-

half of her client, defendant/appellant Buser, for this court to hold K.S.A. 2014 Supp. 20-3301 unconstitutional. She properly served by mail the Mitchell County Attorney, counsel of record for the State who has represented his client throughout the entire case but has never filed any response or request for extension of time for the State to respond to Carver-Allmond's motion. See Supreme Court Rule 5.01(c), (d) (2014 Kan. Ct. R. Annot. 34); Supreme Court Rule 5.02(c) (2014 Kan. Ct. R. Annot. 35).

After more than 90 days of silence from the State, we proceeded to fully analyze the issues raised by Carver-Allmond's motion. We eventually entered our 17-page Order granting the motion on July 1. Copies of the Order were sent to the only counsel of record: Carver-Allmond for Buser and the Mitchell County Attorney for the State.

Once the Attorney General learned of Carver-Allmond's motion and our Order, he then was afforded the full opportunity to revisit the issue of the statute's constitutionality on behalf of the State when he filed his motion based upon K.S.A. 60-260(b)(1) and (b)(6).

Even if we accept as true the Attorney General's assertion that the County Attorney was under a "seemingly mistaken impression" about our court rules, ignorance of the rules does not constitute excusable neglect under subsection (b)(1). See, *e.g.*, *In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005). The Attorney General has similarly been unable to show surprise under subsection (b)(1) because the facts presented reveal the State could have guarded against any "injury" with ordinary prudence. See *Mid Kansas Fed'l Savings. & Loan Ass'n v. Burke*, 233 Kan. 796, 799, 666 P.2d 203 (1983).

The Attorney General also has been unable to meet the burden to show "any other reason justifying relief" for the State under subsection (b)(6). He argues fairness and public policy concerns require withdrawing our Order and giving another opportunity to respond to Carver-Allmond's motion. But the Attorney General's client—the State—was already provided that opportunity when the County Attorney, its counsel of record, received a copy of that motion. And the Attorney General now has been given that same opportunity for the State under statute and our case law—to show

the important factor of a meritorious defense to the motion, *i.e.*, that the statute is constitutional. See *Alivio*, 275 Kan. at 172-73. The only specific argument the State has identified was twice explicitly rejected in our July 1 Order based upon the plain language of K.S.A. 2014 Supp. 20-3301.

We will not grant the State a privilege unavailable to other parties and their counsel in Kansas, *i.e.*, three bites at the same apple. *Cf. Reliance Insurance Companies v. Thompson-Hayward Chemical Co.*, 214 Kan. 110, 116, 519 P.2d 730 (1974) ("Judgment by default becomes necessary when the inaction of a party frustrates the orderly administration of our judicial process. The section of the Kansas Code of Civil Procedure permitting entry of a default judgment is a deterrent to the strategy of delay.").

The motion on behalf of the State to withdraw our July 1 Order is denied.

IT IS SO ORDERED this 25th day of September, 2015.

Lawton R. Nuss
Chief Justice

MALONE, S.J., assigned under K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy L. Moritz to the United States 10th Circuit Court of Appeals.