No. 88,736

STATE OF KANSAS, *ex rel.* CARLA J. STOVALL, Attorney General, and KANSAS BOARD OF PHARMACY, *Plaintiffs/Appellees,* v. ROY C. ALIVIO, BO PLATT, and MALE CLINIC, L.L.C., d/b/a MALE CLINIC, DAVID HAIRHOGER, d/b/a COMMUNITY DRUG OF PITTSBURGH, *Defendants/Appellees,* MILES JONES, M.D., *Defendant/Appellant,* and RICK WILLIAMS, M.D., *Defendant/ Appellee.*

61 P.3d 687

Opinion filed January 24, 2003.

*Rachel Mackey,* of Oyler & Pauzauskie, of Topeka, argued the cause, *Stanley E. Oyler,* of the same firm, was with her on the brief for appellant.

*Stacy A. Jeffress,* assistant attorney general, argued the cause and was on the brief for appellee State of Kansas.

The opinion of the court was delivered by

NUSS, J.: Defendant Miles Jones, M.D., appeals the district court's denial of his motion to set aside a default judgment against him. We transferred from the Court of Appeals on our own motion under K.S.A. 20-3018(c) and now consider two issues: First, whether the district court abused its discretion in denying Jones' motion; second, whether the district court improperly considered inadmissible evidence in making its decision. We find no abuse of discretion and further find Jones failed to identify the alleged inadmissible evidence. We therefore affirm.

FACTS:

On March 11, 1999, Angelia Crawford, while acting in her capacity as a Special Agent in the Office of Attorney General, ac-

cessed an internet website for the Male Clinic. While online she completed the clinic's medical questionnaire, presented her complaint of difficulty in reaching sexual arousal, and requested a prescription for ten 100-milligram tablets of Viagra, an oral therapy for erectile dysfunction. See Physicians' Desk Reference 2653 (57th ed. 2003).

Crawford's completed questionnaire was reviewed by its author, defendant Jones, a physician associated with the Male Clinic. According to Jones' application to renew his medical license with the Kansas Board of Healing Arts, he is a pathologist. Stedman's Medical Dictionary 1312 (26th ed. 1995) describes this as "a physician who practices, evaluates, or supervises diagnostic tests, using materials removed from living or dead patients, and functions as a laboratory consultant to clinicians, or who conducts experiments or other investigations to determine the causes or nature of disease changes." Presumably in this pathological capacity, Jones evaluated Crawford's questionnaire responses and prescribed Viagra for her difficulty in reaching sexual arousal. He then forwarded the prescription authorizing its dispensation. Within 10 days of Crawford's inquiry, she received ten 100-milligram Viagra tablets in the mail from Community Drug of Pittsburgh, Pennsylvania.

On June 9, 1999, the Offices of Attorney General and the State Board of Pharmacy filed suit in Shawnee County District Court against Jones and others alleging Jones' prescription for Viagra without a physical examination and counseling violated the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* In particular, the State alleged unconscionable acts and practices under K.S.A. 2001 Supp. 50-627. The State never served the initial petition on Jones, however, because it did not have his address at the time of filing.

After the State discovered service addresses for Jones, it filed an amended petition on June 21, 1999. Crawford dispatched copies of the amended petition, summons, and other information via certified mail to two of Jones' medical practice locations in Illinois and Georgia and his home address in Missouri (which apparently also doubled as the address for Consultative & Diagnostic Pathology, Inc.), all of which Jones had listed on his medical license renewal application at the Kansas Board of Healing Arts.

On June 28, 1999, Jones' 17-year-old daughter, Jessica Jones, receipted for the summons and amended petition mailed to their home in Lee's Summit, Missouri. She later acknowledged in an affidavit that the signature appeared to be hers, but she had "no specific independent recollection" of receiving it and "no specific independent recollection of what I did or did not do with" it. That same day a second certified mail receipt—for Jones' West Frankfort, Illinois, practice location—was date-stamped by an unknown person evidencing delivery but was not signed. During oral arguments Jones' counsel was unable to explain who had provided the date stamp or what had been done with the accompanying summons and amended petition. On the next day, June 29, 1999, Terry F. Meyer signed a third certified mail receipt sent to Jones' practice location in Clayton, Georgia. Meyer is co-owner of Physicians Laboratory Service, Inc., and Jones serves as the company pathologist. During oral arguments Jones' counsel was unable to explain what Meyer had done with the accompanying summons and amended petition.

Jones failed to respond, so on August 31, 2001, the State filed a notice of default in district court and dispatched a copy via certified mail to Jones. On September 6, 2001, Jones' wife signed the certified mail receipt sent to their home in Lee's Summit. During oral arguments, Jones' counsel was unable to explain what Mrs. Jones had done with the accompanying notice of default.

On October 4, 2001, the State filed a motion for default judgment against Dr. Jones and dispatched a copy to his home by first class mail. On October 29, 2001, the district court granted the State's motion, and the journal entry was filed.

On January 16, 2002, Jones filed a motion to set aside the default judgment under K.S.A. 60-260(b) claiming his failure to respond was not the result of willful or inexcusable neglect, but rather surprise. He alleged he was personally unaware of the lawsuit until he had returned from an extended trip to Alaska. According to his motion, from August 15, 2001, until November 2001, he had been physically residing in the State of Alaska providing care to Native Alaskans at the Alaska Native Medical Center in Anchorage. Upon Jones' return to his Missouri home in November, he had examined

his mail and discovered the default judgment ordering him to pay a $10,000 civil penalty. He then retained legal counsel who investigated the matter and filed the motion.

The district court denied Jones' motion in a letter decision dated February 20, 2002, stating:

"The Court has examined the motion of the defendant Jones to set aside default judgment and plaintiff's response thereto. In the Court's view, the motion fails for two reasons: 1) good and sufficient service was had on the movant when the same was delivered to his home and signed for by his 17 year old daughter, a person of suitable age and discretion; and 2) no real meritorious defense is presented for prescribing Viagra, through the Male Clinic to Angelia Crawford, a female person. Motion overruled."

## DISCUSSION

### Issue 1: *Inadmissible evidence*

Jones alleges the court improperly considered inadmissible evidence in denying his motion to set aside the default judgment. He fails to present the allegedly improper evidence, however, for our examination; he only alleges "certain inadmissible documents under seal" were provided to the court. "An appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001). Moreover, even if he had identified such evidence, there is nothing in the record demonstrating that the district court had actually considered it. His argument has no merit.

### Issue 2: *Abuse of discretion*

Jones also alleges the court abused its discretion in denying his motion to set aside the default judgment under K.S.A. 60-260(b). It states in relevant part: "On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

In interpreting this statute, we have stated that the trial court may grant a motion to set aside a default judgment when it finds "(1) that the nondefaulting party will not be prejudiced by the

reopening, (2) that the defaulting party has a meritorious defense, and, (3) that the default was not the result of *inexcusable neglect or a willful act." Montez v. Tonkawa Village Apartments,* 215 Kan. 59, 64, 523 P.2d 351 (1974). When, as here, the trial court denies the motion, our appellate review is for its abuse of discretion, and the movant has the burden of proving relief grounds by clear and convincing evidence. *In re Marriage of Zodrow,* 240 Kan. 65, 68, 727 P.2d 435 (1986). Discretion is abused only where no reasonable person would take the trial court's view. *Zodrow,* 240 Kan. at 68. Additionally, an appellant's failure to show all three *Montez* elements would doom his appeal. See *Jenkins v. Arnold,* 223 Kan. 298, 301, 573 P.2d 1013 (1978).

Jones does not appear to directly dispute the trial court's determination that valid service of process was obtained on him through service on his daughter, but rather seems to argue that he showed excusable conduct in failing to timely respond to the lawsuit. Toward that end, he alleges his case is analogous to the plight of the defendants in *Montez* and *Mid Kansas Fed'l Savings & Loan Ass'n v. Burke,* 233 Kan. 796, 666 P.2d 203 (1983). We disagree.

In *Montez,* the resident manager for the defendant apartment complex was served with summons and a copy of a personal injury petition. According to his affidavit in support of setting aside the default judgment against the complex, he placed the papers on his desk and neither he nor any one else ever saw them again; he simply forgot about them. He failed to tell the complex's owners of the suit, and default judgment was taken. This court set aside the default judgment, holding that this was simple neglect, not inexcusable neglect or "reckless indifference." 215 Kan. at 65.

In *Mid Kansas,* defendant Carole Burke was successfully served by leaving a summons and a copy of the mortgage foreclosure petition with her husband at their residence. As with the apartment manager in *Montez,* he failed to inform her of the lawsuit, and default judgment was taken against her. After she became aware of the suit via receipt of a writ of assistance following the sheriff's sale, she filed a motion under K.S.A. 60-260(b). At the hearing her testimony established that her husband had a drinking problem. This court held that entrusting her husband with family financial

affairs, absent any indication that she should have known that he was not making mortgage payments when due, could not be characterized as reckless or inexcusable. 233 Kan. at 799. We affirmed the trial court's vacation of the default judgment.

By contrast, the case at hand reveals that three different people at three different times at two different locations received notice of the lawsuit, either through receipt of the summons and amended petition or the notice of default. Moreover, a fourth notice was apparently accepted at a third location by yet another person. Yet, allegedly none of these recipients notified Jones. Furthermore, unlike the defendants in *Mid Kansas* and *Montez* who met their burden for relief by providing evidence of simple neglect, our defendant fails to provide evidence as to what happened on these numerous occasions that prevented his notice of the suit. He provides no affidavit as to what happened at his medical clinics in Georgia and Illinois, no affidavit as to what happened with his wife at his home in Missouri, and the affidavit he provides from his daughter does not establish why she failed to notify him of the lawsuit. Moreover, while Jones' own affidavit establishes his presence in Alaska from August to November 2001, it does not solve the mystery of why he had not received notice of the multiple services of process that had been obtained at least 26 months earlier.

We acknowledge that what constitutes excusable neglect must be determined on a case-by-case basis under the facts presented. *Mid Kansas*, 233 Kan. at 799. Under these facts, however, where notice is repeatedly accepted not only at a physician's home, but also at two of his medical offices that presumably are staffed with fellow responsible professionals, we cannot say that no reasonable person would take the position adopted by the trial court when it essentially concluded Jones was recklessly indifferent.

Our affirmation of reckless indifference/inexcusable neglect eliminates the need to address the remaining elements identified in *Montez*: lack of prejudice to the nondefaulting party and a meritorious defense for the defaulting party. See *Jenkins*, 223 Kan. at 301 (Court upheld trial court's denial of motion to set aside default

judgment because though the defendant demonstrated excusable neglect, he failed to establish a meritorious defense.).

Affirmed.