NOT DESIGNATED FOR PUBLICATION

No. 118,931

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN MACOMBER,
*Appellant*,

v.

SAM CLINE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR SUNDBY, judge. Opinion filed October 19, 2018. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Sherri Price*, legal counsel, of Lansing Correctional Facility, for appellee.


Before BRUNS, P.J., MCANANY, J., and BURGESS, S.J.


PER CURIAM: Stephen Macomber, an inmate at Lansing Correctional Facility, appeals from the summary dismissal of his K.S.A. 60-1501 habeas corpus claim arising out of a prison disciplinary action. On appeal, Macomber contends that the underlying record is insufficient to support his disciplinary convictions. He also contends that there were several procedural errors during the disciplinary action that deprived him of due process. We find that there is sufficient evidence to support Macomber's disciplinary convictions. Likewise, we do not find that his right to due process was violated under the circumstances presented. Thus, we affirm the district court's summary dismissal of Macomber's K.S.A. 60-1501 action.

FACTS

Macomber is an inmate in the custody of the Kansas Department of Corrections (KDOC). On December 22, 2016, two corrections officers responded to Macomber's cell at Lansing Correctional Facility after a report of a medical emergency. Upon arriving at the cell, Macomber allegedly told one of the corrections officers that he needed to "get the full response team [here] because some 'shit' was going to happen when the door opened." Additionally, Macomber allegedly yelled to other inmates not to lock down their cells and to "set this 'shit' off."

On December 22, 2016, Macomber was charged in a prison disciplinary action with disruptive behavior—in violation of K.A.R. 44-12-318—and with threatening or intimidating another person—in violation of K.A.R. 44-12-306. In response, Macomber denied that he made the comments attributed to him by CSI Cawthorn and pleaded not guilty. A hearing commenced on December 28, 2016.

On the first day of the hearing, the disciplinary report and witness request form were entered into the record. The disciplinary report was signed by CSI Cawthorn and detailed the statements made by Macomber on December 22, 2016. Then, the hearing officer questioned Macomber about his alleged statements to the prison staff and other inmates. Macomber denied making the statements. After Macomber testified, Macomber questioned inmate Thad McCrory. McCrory denied hearing Macomber make those same statements.

The hearing was continued until the next day so that "both of the 3rd shift officers who [were] present at the cell" could testify. When the hearing resumed on December 29, 2016, a different hearing officer presided. On the second day of the hearing CSI Cawthorn testified. His statements were consistent with the disciplinary report; that Macomber stated something would happen when the door opened and that Macomber

2

tried to involve other inmates. At the conclusion of the disciplinary hearing, Macomber was convicted of both administrative violations. He was fined $20 and 30 days of privilege restrictions were imposed.

On March 17, 2017, Macomber filed a pro se petition for writ of habeas corpus under K.S.A. 60-1501 in Leavenworth County. In his petition, Macomber claimed that his due process rights were violated because the presiding hearing officers were not fair and impartial. He also claimed a due process violation because he was not "allowed to have witnesses on his behalf."

On July 24, 2017, the district court granted respondent Cline's motion to dismiss and denied Macomber's K.S.A. 60-1501 petition. In its memorandum decision, the district court emphasized that the due process rights of prisoners are satisfied when there is "some evidence from which the conclusion of the administrative tribunal could be deduced." Based on a review of the record, the district court concluded that there was sufficient evidence presented at the disciplinary hearing to meet the "some evidence" standard.

The district court further concluded that Macomber's due process rights were not violated. The district court noted that Macomber made a request to call two witnesses. One of these witnesses testified, and Macomber withdrew his request for the other witness to testify at the disciplinary hearing. Additionally, the district court determined that it was not a due process violation to have one hearing officer start the disciplinary hearing and another hearing officer finish the disciplinary hearing the following day. The district court found that the second hearing officer had reviewed and taken into consideration the evidence presented on the first day of the hearing in rendering his decision. Finally, the district court did not find that the second hearing officer was biased.

3

ANALYSIS

On appeal, Macomber first contends that the district court erred by summarily dismissing his K.S.A. 60-1501 petition. We review a district court's factual findings to determine whether they are supported by substantial competent evidence. Substantial competent evidence exists when there is "legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004). We review the summary dismissal of a habeas claim de novo. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009).

For a K.S.A. 60-1501 habeas corpus petition to overcome the hurdle of summary dismissal the allegations therein "must be of shocking and intolerable conduct" or alternatively, the conduct alleged must constitute "continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). A district court may dismiss if, from the face of the petition, it is clear that the "petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." *Johnson*, 289 Kan. at 648-49.

In the context of a prison disciplinary proceeding, we must determine whether there is "some evidence" to support the hearing officer's decision. *Sammons v. Simmons*, 267 Kan. 155, 159, 976 P.2d 505 (1999). In applying this standard, we do not make an independent assessment of the credibility of witnesses or reweigh the evidence. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." 267 Kan. 155, Syl. ¶ 3. We note that the "some evidence" standard of review was articulated by the United States Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). See *Anderson v. McKune*, 23 Kan. App. 2d 803, 807-08, 937 P.2d 16 (1997).

4

Here, the district court found that "some evidence" existed to justify the hearing officer's decision. This evidence included CSI Cawthorn's report, which was admitted into evidence at the disciplinary hearing as well as testimony. Specifically, there was evidence presented at the hearing that Macomber yelled to and encouraged other inmates to refuse to lock down their cells. There was also evidence presented at the hearing that Macomber made statements to the correction officers that trouble was going to happen when they opened his cell door.

Like the district court, we conclude that there was sufficient evidence presented at the disciplinary hearing to support Macomber's disciplinary convictions. Macomber's statement that the guard should bring a response team because he was going to "set shit off" is sufficient to show a violation of K.A.R. 44-12-306 because it may reasonably be inferred that it was made to "threaten or intimidate" the prison staff. See, K.A.R. 44-12-306(a). Similarly, Macomber telling other inmates "to not lock down" and "trying to get others involved" is sufficient to show a violation of K.A.R. 44-12-318(a) because it may reasonably be inferred to constitute disruptive behavior.

Macomber next contends that he was denied due process at the disciplinary hearing. The issue of due process is a question of law over which we have unlimited review. *In re K.E.*, 294 Kan. 17, Syl. ¶ 1, 272 P.3d 28 (2012). A due process violation occurs where a person is denied a procedural protection to which he or she is entitled. 294 Kan. 17, Syl. ¶ 2. The question of procedural due process is a two-step analysis. First, we must determine "whether the State deprived the petitioner of life, liberty, property." Second, if such rights are implicated, we must determine "the extent and the nature of the process due." *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009) (citing *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 [2005]).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v.*

5

*McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Yet, prison officials must follow certain due process procedures. These procedures include "'a written notice of the charges to enable inmates to prepare a defense, an impartial hearing, the opportunity to call witnesses and present documentary evidence, and a written statement from the hearing officer as to the findings and the reasons for the decision.' [Citation omitted.]" *Smith v. Roberts*, No. 112,342, 2015 WL 4487067, at *3 (Kan. App. 2015) (unpublished opinion).

Because Macomber received a $20 fine and 30 days of privilege restrictions in his disciplinary hearing, his due process rights have been implicated. See *Johnson*, 289 Kan. at 649-50; *Speed v. Cline*, No. 114,157, 2016 WL 758750, at *2 (Kan. App. 2016) (unpublished opinion) ("[t]he $20 fine . . . entails a loss of property triggering due process rights"). As such, we turn our attention to whether Macomber's due process rights have been violated. Based on our review of the record on appeal, we do not find any such violations.

Macomber suggests that it was inappropriate for two hearing officers to have been involved in the disciplinary hearing. The procedure for inmate disciplinary hearings is set out in K.A.R. 44-13-101. The regulation provides that "[a]ll stages of the disciplinary hearing shall be conducted by a hearing officer appointed by the warden." K.A.R. 44-13-101(h). Similarly, K.A.R. 44-13-105(b) states that "one or more impartial hearing officers shall be appointed by the warden to conduct disciplinary hearings at each. . . . facility," and that hearing officers must receive training. We pause to note that Macomber has not challenged the training of the hearing officers who presided over his disciplinary hearing.

Based on our reading of the regulations, we find the authority of hearing officers in the context of prison disciplinary hearings to be relatively broad. In a disciplinary proceeding, a duly-appointed hearing officer may entertain motions, rule on objections, accept pleas, make findings of guilt or innocence, impose sentences, dismiss cases, rule

on evidentiary issues, and take other actions relating to the proceeding. K.A.R. 44-13-403(e)-(j). Additionally, hearing officers have the authority to grant continuances upon their own motion or upon application of the inmate. K.A.R. 44-13-402(a). Likewise, hearing officers have the authority to grant recesses of an "appropriate and reasonable length." K.A.R. 44-13-402(c)(3).

When a statute or regulation is unambiguous, we do not need to resort to statutory construction. Only when statutory text is ambiguous does the court consider canons of construction, legislative history, or other tools to interpret the legislature's intent. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Although we agree that it is better practice to have the same hearing officer preside over a disciplinary hearing, we find nothing in the regulations that prevent one hearing officer from replacing another during the course of the hearing. When read in context, the term "hearing officer"—as used in the regulations—identifies the position and not a particular person.

Macomber also argues that he was denied an impartial hearing because McCrory's testimony was somehow "cut off" by the first hearing officer. Macomber acknowledges that the record does not reflect this "disruption" and we have no basis to conclude that this actually happened if it is not in the record. A review of the record reveals that Macomber asked McCrory just two short questions at the disciplinary hearing. Then, the hearing officer asked several questions of McCrory regarding the incident. At no time did Macomber make any sort of objection or statement on the record that McCrory's testimony was cut off, interfered with, restricted, or otherwise incomplete.

Further, Macomber argues that we should look past the record, and consider an affidavit sworn by McCrory accounting the "complete" testimony that McCrory would have given. In *Starr v. Bruce*, 35 Kan. App. 2d 11, 14, 129 P.3d 583 (2005), an inmate made a similar request for the Court of Appeals to examine additional evidence in a case involving the summary dismissal of a 60-1501 habeas case. As the panel explained in

*Starr*, "[u]nfortunately, we are unable to consider such material where it has not been made a part of the record on appeal. Material appended to an appellate brief is not a substitute for the record and will not be considered." 35 Kan. App. 2d at 14. We agree with the panel in *Starr* and find that it would be inappropriate for us to consider the affidavit submitted in this case.

Finally, Macomber contends that he had prior altercations that involved physical force with the two hearing officers that presided over his disciplinary hearing. As a result, he argues that they were biased against him. We find nothing in the record to explain the incidents that Macomber claims nor has he explained why the prison officials would be unable to impartially hear this unrelated matter. On appeal, "[a]n appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails." *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172, 61 P.3d 687 (2003). Because Macomber has failed to do so, we find his argument to be unpersuasive.

Affirmed.