NOT DESIGNATED FOR PUBLICATION

No. 128,338

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RIVERCHASE, LLC,
*Appellee,*

v.

PAULA GOLDWYN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Riley District Court; JEREMY LARCHICK, magistrate judge. Submitted without oral argument. Opinion filed January 16, 2026. Affirmed.

*Paula Goldwyn*, appellant pro se.

*Jared R. Muir*, of Topeka, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and PICKERING, JJ.

ARNOLD-BURGER, J.:  Missing a court date can have disastrous consequences. It can result in your case being dismissed if you brought the lawsuit or it can result in a judgment against you if you are defending the lawsuit. The latter is what happened to Goldwyn.

Riverchase mobile home park sought to evict Paula Goldwyn from the park due to the aggressive behavior of her German Shepherd dog toward other residents. When Goldwyn miscalendared the trial date and failed to appear, the district court granted a

1

default judgment of eviction for Riverchase. The district court denied her request a week later to set aside the default. Because we find the district court did not abuse its discretion in entering a default judgment, we affirm. We also find that Goldwyn has abandoned her claim that the court erred in failing to set aside the default judgment due to her failure to adequately brief the issue and to pinpoint in the record where she preserved it for appellate review.

FACTUAL AND PROCEDURAL HISTORY

Goldwyn and her roommate, 86-year-old Leon Sanders, had a month-to-month lease for a lot space at Riverchase mobile home park.

Complications emerged about 18 months after they moved in, involving their German Shepherd dog. Riverchase began receiving complaints alleging the German Shepherd exhibited aggressive behaviors toward other residents and their pets within the community. Riverchase's governing rules require that residents ensure their pets neither make disturbing noises nor perform acts that other residents or management could construe as annoying or aggressive. The provisions specified that repeated violations would trigger mandatory pet removal or resident eviction.

Riverchase served Goldwyn with a notice of breach of agreement and termination, alleging her German Shepherd "perform[ed] aggressive behaviors towards other residents and their pets in the community." The notice cited specific lease provisions requiring residents to keep pets restrained, prevent them from making noise or engaging in aggressive acts toward others, and warned that repeated violations would result in the removal of the pet or eviction. The notice afforded Goldwyn 14 days to remove the animal or 30 days to vacate the premises.

2

After Goldwyn did not remedy the violation, Riverchase initiated eviction proceedings on July 19, 2024.

Goldwyn and Sanders were served with the eviction summons and filed answers denying the allegations. Sanders described himself as a "a disabled 86 year old" for whom the dog served as both a companion and a service animal. He acknowledged the dog's behavior "is sometimes misinterpreted" and suggested that "[c]ommon sense would suggest that people should avoid walking past our yard if they feel [the dog] is a disturbance to them."

Goldwyn's answer alleged discrimination against Sanders based on his disability. She claimed that at a prior hearing on April 4, 2024, "[Riverchase's] manager (Keri) testified before Judge Larchick . . . that there were 'no complaints' about [the dog] from any resident." She alleged that Riverchase staff started recruiting other residents to fabricate accusations about the dog's aggressiveness after she and Sanders requested accommodation to erect a fence on their lot.

Goldwyn further asserted that the Riverchase staff never informed her of what any of the aggressive behaviors were or asked her side of the story. She claimed that after repeated calls to the office, the Riverchase manager told her about "only two complaints, one being that [the dog] was outside on her tie-out with nobody there to observe her and the other claim was that she had attacked some mysterious poodle," which she claims she told the manager "were 100% false." She concluded by leveling accusations of harassment, fraud, and intentional infliction of emotional distress against Riverchase management.

The district court issued a notice scheduling trial for August 12, 2024, at 10:30 a.m. Court staff supplemented written notices via eFlex and U.S. mail with telephone calls and emails to Goldwyn and Sanders. The court received no response suggesting

3

Goldwyn or Sanders sought a delay or continuance. There is no dispute that Goldwyn received the notices of trial and understood she had to appear.

On the morning of August 12, 2024, Riverchase appeared through counsel and with witnesses. At the appointed time of 10:30 a.m., neither Goldwyn nor Sanders appeared. The district court asked that the hallways be checked at 10:35 a.m. and again at 10:40 a.m. Not finding Goldwyn or Sanders present and having received no continuance request, the district court granted Riverchase's motion for default judgment. That evening, Sanders died.

Eight days later, Goldwyn filed a motion to set aside the default judgment under K.S.A. 60-260(b) (relief from a judgment). She attributed her absence to misreading the trial date and erroneously setting her phone alarm for August 14 instead of August 12. She expressed bewilderment at her own error, writing that "GOD ONLY KNOWS" why she put the wrong date in her cell phone calendar.

Goldwyn provided an extensive contextual explanation for her error. She detailed severe back pain and flu-like symptoms in the days before trial, including graphic descriptions of vomiting, diarrhea, and incontinence. She also explained her caregiving responsibilities for Sanders, who was likewise gravely ill and ultimately died on the night of the trial, August 12.

Riverchase contested Goldwyn's claim of no prejudice, explaining that its witnesses had taken time from work to attend the trial, and their future availability remained uncertain. Riverchase further noted that conducting another trial would impose additional costs, including counsel's two-hour round trip to attend.

Riverchase also challenged Goldwyn's professed ignorance about the complaints in her answer. It highlighted Sanders' answer, which acknowledged that people felt

4

disturbed by the dog and suggested they should avoid walking past their yard. This statement, Riverchase argued, demonstrated that the defendants knew their dog was causing problems.

Two days later, the district court issued its ruling. The order proved terse and conclusory: "[a]fter considering the arguments of the Defendant, and the response by the Plaintiff, the Court DENIES Defendant's Motion to Set Aside Default Judgment." The court provided no detailed findings or analysis of the factors germane to its decision.

Goldwyn appeals.

ANALYSIS

*The District Court Did Not Err in Granting Riverchase a Default Judgment When Goldwyn failed to Appear at Trial*

> *Our standard of review for default judgment is whether the district court abused its discretion.*

Appellate courts review a district court's grant of default judgment for abuse of discretion. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). As the party asserting abuse of discretion, Goldwyn bears the burden of showing such abuse of discretion. 319 Kan. at 400. Here, Goldwyn does not claim a legal or factual error, so we are left with determining whether Goldwyn has met her burden to show that the district court's action was arbitrary, fanciful, or unreasonable.

5

*We briefly review the requirements of the Kansas Mobile Home Parks Residential Landlord and Tenant Act.*

The Kansas Mobile Home Parks Residential Landlord and Tenant Act (Act), K.S.A. 58-25,100 et seq., governs most mobile home rental agreements in Kansas. The Act establishes nonwaivable rights and responsibilities for landlords and tenants in mobile home parks. Tenants must comply with applicable health and safety ordinances, maintain their lots in reasonably safe and clean condition, and adhere to park rules, including those regulating pets. K.S.A. 58-25,113, K.S.A. 58-25,114. When tenants materially breach the rental agreement or create noncompliance that materially affects health and safety, landlords may deliver written notice specifying the breach and stating that the rental agreement will terminate after 30 days if the breach remains unremedied within 14 days. K.S.A. 58-25,120(a).

Complementing these substantive obligations, Kansas eviction statutes establish specific procedures for limited actions proceedings. K.S.A. 61-3801 through K.S.A. 61-3808 "govern lawsuits brought to evict a person from possession of real property." K.S.A. 61-3801. Within this procedural structure, K.S.A. 2024 Supp. 61-3301(a)(1) authorizes default judgment when a defendant "fails to either appear or file a written answer on or before the time specified in the summons." And K.S.A. 2024 Supp. 61-3301(a)(2) authorizes default judgment when the defendant "fails to appear at the time set for a pretrial or trial."

These default provisions operate amid the eviction process' compressed timelines. K.S.A. 61-3805 requires the summons to provide a date for answer or appearance, which is 3 to 14 days after the summons is issued. And K.S.A. 2024 Supp. 61-3807(a) directs courts to conduct a trial within 14 days after the appearance date stated in the summons. K.S.A. 2024 Supp. 61-3807(a). These "aggressive timelines for eviction cases set by

Kansas statutes" create practical pressures on both courts and litigants. *Washburn South Apartments v. Hession*, 65 Kan. App. 2d 626, 641, 570 P.3d 1268 (2025).

If a defendant fails to appear at the time set for trial, "judgment may be entered against the defendant at the request of the plaintiff without further notice to the defendant." K.S.A. 2024 Supp. 61-3301(a)(2).

*The district court did not abuse its discretion in granting a default judgment when Goldwyn failed to appear for trial.*

There is no dispute that Goldwyn received the notice of trial electronically the same day it was sent to her and immediately entered it in her phone—albeit mistakenly as August 14.

The district court confirmed it had provided proper notice through multiple channels—the original summons, written notice from the deputy clerk on July 31, and phone calls and emails from court staff. When neither defendant appeared despite the court's patience in checking hallways and waiting past the scheduled time, the district court properly exercised its discretion to enter default judgment.

Thus, the district court properly entered default judgment under K.S.A. 2024 Supp. 61-3301(a)(2). Goldwyn received notice of the August 12 trial through four methods, and she acknowledged receiving notice. These multiple notices exceed the notice requirements for limited actions proceedings. The district court also demonstrated patience, checking hallways twice past the scheduled time.

We are not blind to the fact that pro se litigants face genuine challenges navigating procedural legal requirements, particularly in expedited eviction proceedings. But while defaults are disfavored and courts prefer resolution of disputes on the merits, procedural

7

rules must be enforced. *Garcia*, 303 Kan. at 565-66. Pro se litigants receive leeway in the construction of their pleadings, but this leniency does not absolve pro se parties from adhering to procedural requirements or meeting substantive legal standards. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022).

When the district court provides clear notice through multiple channels a litigant must appear for trial. Goldwyn's absence, attributed to her own calendaring error, left the district court no alternative but to enter a default judgment.

Goldwyn has failed to meet her burden to show the district court's dismissal was arbitrary, fanciful, or unreasonable.

*Goldwyn Failed to Establish That She Properly Preserved Her Challenge to the Motion to Set Aside Judgment and Fails to Adequately Brief the Issue Even if She Did*

Goldwyn's second issue asserts that even if the court properly entered a default judgment when she failed to appear, it erred when it failed to set it aside.

Our review of Goldwyn's argument is limited for two reasons.

The first reason rests on Supreme Court Rule 6.02(a)(4) (2025 Kan. S. Ct. R. at 36) which requires facts to be "keyed to the record on appeal by volume and page number" and warns the court "may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." The rules also require "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36). Goldwyn provides neither.

Goldwyn correctly focuses on the three necessary elements to establish that the court should set aside a default: no prejudice to the opposing party, a meritorious defense to the underlying claims, and the default resulted from excusable neglect rather than inexcusable neglect or willful conduct. Failure to establish all three elements would "doom [the] appeal." *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172-73, 61 P.3d 687 (2003) (citing *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 64, 523 P.2d 351 [1974]). And she generally claims in her brief, that she read the notice of hearing wrong, the dog was not aggressive, and Riverchase will not suffer prejudice. Yet, she fails to cite to the location in the record where she raised those issues to the district court, and she fails to cite to any evidence in the record to support each claim. That alone dooms her appeal.

But if that were not enough, the second reason involves her complete failure to adequately brief the issues raised. Such failure requires this court to find the issues to be waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). A point raised incidentally in a brief and not argued therein is also deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). And, failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is also akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Goldwyn's briefing suffers from all of these infirmities.

Goldwyn's legal analysis consists entirely of a list of 10 cases, numbered 1-10, without analysis or application to the facts in this case. Nor does she cite to the record where she made these arguments to the trial court. Moreover, her brief contains numerous citation errors, mischaracterizations, and even citations to cases that appear not to exist or have no relevance to default judgments. We will break that down in more detail.

9

First, Goldwyn's case citations are duplicative or erroneous. Goldwyn's use of "*Garcia v. Ball*" appears three times, erroneously cited or relied on each time.

As Case No. 1, "*Garcia v. Ball*, 50 Kan. App. 2d 197, 323 P.3d 872 (2014)," she claims that "[t]he court reversed a default judgment due to an error in the journal entry of sentencing," but this is not accurate. Although the underlying malpractice action against Ball involved his failure to timely correct a sentencing journal entry, that had nothing to do with why Garcia was granted default judgment. Garcia was granted default judgment against Ball when he failed to file an answer in the civil malpractice lawsuit. Moreover, the case citation provided is for the Court of Appeals decision, which has no precedential value because it was overruled on appeal by the Kansas Supreme Court. See *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015). We could proceed to analyze the Kansas Supreme Court decision in *Ball* and its application to these facts, but again, Goldwyn has abandoned any such claim by failing to make that argument herself.

Case No. 5, "*John Arthur Boyd v. Charles Ball*, No. 108,817 (Kan. Sup. Ct. 2014)," the second *Ball* citation, does not exist although it cites the same case number as Case No. 1. And Case No. 9, "*State v. White*, No. 108,817 (Kan. Ct. App. 2014)," also cites the same case number as *Ball*. Yet, there *are* actually many cases captioned *State v. White*, the most recent of which is a criminal case involving indecent liberties with a child that has nothing to do with default judgments. 316 Kan. 208, 514 P.3d 368 (2022).

Second, multiple cases are completely mischaracterized or irrelevant. Goldwyn cites Case No. 8, "*Wiles v. American Family Insurance Co.*, 302 Kan. ___, 355 P.3d 667 (2015)," as reversing "a default judgment based on inadvertence," but *Wiles* is actually an insurance coverage dispute about intoxication exclusions with no default judgment involved. See *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 350 P.3d 1071 (2015). The citation given by Goldwyn for Case No. 8, is actually for another case, *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 355 P.3d 667 (2015),

10

which is Case No. 3 on appellant's case list. However, as pointed out below, appellant also mischaracterized the holding in *Mashaney*. So neither the case name, nor the citation given by Goldwyn here, refer to an applicable case.

Case No. 10, listed as "*Smith v. Kansas Department of Revenue*, No. 119,429 (Kan. Ct. App. 2018)," appears not to exist with that case number. There *is* an actual *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 242 P.3d 1179 (2010), but the case involves a driver's license suspension for DUI and has nothing to do with default judgments or clerical mistakes.

Third, Goldwyn fundamentally misrepresents the holdings of cases she cites. The citation given by Goldwyn for "*Smith v. Kansas Department of Revenue*," is actually the citation to a divorce case, *In re Marriage of Schultz*, No. 119,429, 2019 WL 5089859 (Kan. App. 2019) (unpublished opinion), involving a motion to set aside a divorce decree as an improper default judgment. Goldwyn listed *In re Marriage of Schultz* as Case No. 2 on her case list. However, while Goldwyn states the *Schultz* "court reversed a default judgment in a divorce case due to a clerical error," the Court of Appeals in *Schultz* actually ruled that the divorce decree was not, in fact, a default judgment, and affirmed the trial court. *In re Marriage of Schultz*, 2019 WL 5089859, at *1. Similarly, she claims Case No. 3, "*Mashaney v. Board of Indigents' Defense Services*, 302 Kan. [625], 355 P.3d 667 (2015)," involved reversing "a default judgment based on a recent holding regarding the exoneration rule," when that case actually involved judgment on the pleadings in a legal malpractice suit, not a default judgment at all.

Fourth, two cases that she cites involve the specialized exoneration rule for legal malpractice claims against criminal defense attorneys, which is not relevant to eviction proceedings. Case No. 3, *Mashaney*, 302 Kan. at 651, held that criminal defendants need not prove actual innocence to pursue malpractice claims. And Case No. 4, *Canaan v.*

*Bartee*, 276 Kan. 116, 120, 72 P.3d 911 (2003), required criminal defendants to obtain postconviction relief before maintaining malpractice actions against defense counsel.

Fifth, the cases she cites that do address excusable neglect undermine her position. Case No. 7, *First Management v. Topeka Investment Group*, 47 Kan. App. 2d 233, 239-40, 277 P.3d 1150 (2012), affirmed the denial of a motion to set aside, emphasizing that the movant must prove all three *Alivio/Montez* elements "by clear and convincing evidence" and that "'[w]hen a defaulting party has shown no meritorious defense, a trial court is precluded from granting relief.'" See *Alivio*, 275 Kan. at 173.

Similarly, Case No. 6, *White's Roofing, L.L.C. v. Vitolas*, No. 119,957, 2019 WL 2306608, at *2 (Kan. App. 2019) (unpublished opinion), affirmed denial where the defendant "fail[ed] to provide any argument or analysis on how the cited cases apply to her case" and failed to show excusable neglect and a meritorious defense.

The rules related to adequately citing cases upon which a litigant's argument relies are there for a reason. They help courts understand the precise legal basis for a party's argument and assess whether the cited authority supports the claims made. It also allows opposing counsel to understand and distinguish their authority or argument. Unsupported or irrelevant citations waste judicial resources and hinder the court's and the opposing litigant's ability to address the issues effectively.

We pause here, to discuss what could explain these nonexistent case citations or misstated and unhelpful holdings. Some cases cited could be sham cases that Goldwyn simply created out of whole cloth in a fraudulent attempt to support her desired point with opposing counsel or the court. Or, with only a slightly less nefarious purpose, they could have been generated from various artificial intelligence tools that can result in what are referred to as hallucinated cases and holdings.

12

"The use of non-existent case citations and fake legal authority generated by artificial intelligence programs has been the topic of many published legal opinions and scholarly articles as of late. Courts that have addressed the practice consistently agree that the use of fake legal authority is problematic and warrants sanctions. 'Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors . . . . There is potential harm to the reputation of judges and courts whose names are falsely invoked . . . .' *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023) (also explaining that fictious citations promote 'cynicism about the legal profession and the American judicial system [because] . . . a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.'). O'Brien's *pro se* status does not absolve him of the responsibility to abide by a duty of candor to the Court. *See Kendrick v. Sec'y, Florida Dep't of Corr.*, 21-12686, 2022 WL 2388425, at \*3 (11th Cir. July 1, 2022) ('[w]hile it is true *pro se* pleadings are held to a less strict standard than counseled pleadings and are liberally construed . . . [*pro se* litigants] also owe the same duty of candor to the court as imposed on any other litigant.').

"The imposition of sanctions against parties who submit fake citations is also not uncommon. *See, e.g.*, *Thomas v. Pangburn*, CV423-046, 2023 WL 9425765, at \*4-5 (S.D. Ga. Oct. 6, 2023) ('Plaintiff did not explain what sources he relied on during his research or where he found the sham cases.'), *report and recommendation adopted*, 4:23-CV-46, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024). And *pro se* litigants are not immune from such sanctions. *See Kruse v. Karlen*, 692 S.W.3d 43, 48 (Mo. Ct. App. 2024), *reh'g and/or transfer denied* (Apr. 9, 2024) (sanctioning *pro se* litigant who submitted false citations by imposing a $10,000 fine); *see also Morgan v. Cmty. Against Violence*, No. 23 Civ. 353-WPJ/JMR, 2023 WL 6976510, at \*7 (D.N.M. Oct. 23, 2023) (explaining that although courts make 'some allowances for [a] *pro se* Plaintiff's failure to cite to proper legal authority, courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities.' (cleaned up))." *O'Brien v. Flick*, No. 24-61529-CIV-DAMIAN, 2025 WL 242924, at \*6 (S.D. Fla. 2025), *aff'd,* No. 25-10143, 2025 WL 2731627 (11th Cir. 2025).

Again, we understand the difficulty pro se litigants have presenting complex legal issues and distinguishing nuanced caselaw. But self-represented litigants are not exempt

13

from the requirement to follow procedural rules, including pinpoints to the record to show they preserved the issue for appeal, proper citations to real cases relied upon, and an accurate explanation of how the cited cases relate to this case. The Kansas Code of Judicial Conduct states that accommodations for self-represented litigants must not relieve them of the obligation to adhere to the same rules of procedure and evidence as litigants represented by attorneys. Kansas Supreme Court Rule 601B, Canon 2, Rule 2.2, comment 4 (2025 Kan. S. Ct. R. at 483). This ensures fairness and consistency in the application of legal standards, regardless of representation.

In sum, Goldwyn not only failed to demonstrate where she preserved these arguments for appellate review through pinpoint citations to the record, but she has waived and abandoned them due to wholly inadequate briefing. Moreover, we would be justified in dismissing her claims and imposing sanctions for the blatant errors contained in her briefing. Instead, we simply find, as we must, that her claim of error fails.

Affirmed.

* * *

WARNER, C.J., concurring in part and dissenting in part: I join fully in my colleagues' analysis of whether the law permitted the trial court to enter a default judgment against Paula Goldwyn and Leon Sanders when neither appeared for the eviction trial in this case. As the majority opinion notes, all parties must participate in the court process and abide by the procedures that govern that process. And K.S.A. 2024 Supp. 61-3301(a)(2) specifically permits a court to enter a default judgment against a party who does not attend a trial in an eviction case. I diverge, however, in my analysis of the second and primary issue in this appeal—whether Goldwyn has shown that the trial court erred when it denied her motion to set aside that default judgment eight days later.

14

Just as a trial court has flexibility in deciding when a default judgment is appropriate, it also has discretion to set aside that default judgment when principles of fairness and equity warrant that action. But that discretion is not absolute. K.S.A. 2024 Supp. 60-255(b) states that a default judgment may be set aside for any of the grounds listed in K.S.A. 60-260(b). Goldwyn requested that the default judgment in this case be set aside based on K.S.A. 2024 Supp. 60-260(b). K.S.A. 2024 Supp. 60-260(b)(1) allows default judgments to be set aside based on "[m]istake, inadvertence, surprise or excusable neglect," and subsection (b)(6) likewise allows setting aside based on "any other reason that justifies relief." The trial court denied Goldwyn's motion in a two-sentence order two days after she submitted that request (and one day after Riverchase filed a response).

The Kansas Supreme Court has routinely cautioned that courts' analysis of such motions should begin with a preference for resolving claims on their merits, rather than through a finding of default. Our governing caselaw recognizes that "[w]hile there is a need to achieve finality in litigation, judicial discretion must not achieve that end in disregard of what is right and equitable under the circumstances." *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495, 781 P.2d 1077 (1989). Practically speaking, this means that when a court is "determining whether to set aside a default judgment, [it] should resolve any doubt in favor of the motion so that cases may be decided on their merits." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978).

In my view, Goldwyn's arguments on appeal sufficiently call into question whether the trial court's decision was rendered under this governing framework. The majority opinion does not address this issue, however, as it concludes that Goldwyn has not adequately briefed her challenge to the trial court's denial of her motion to set aside the default judgment. I disagree with this conclusion.

15

*Goldwyn's Brief*

Goldwyn's briefing is far from an ideal appellate submission. But that does not mean that it fails to apprise us of error.

The first reason the majority opinion provides for its conclusion that Goldwyn has inaccurately briefed her request for relief is that Goldwyn's brief does not provide sufficient citations to the record on appeal to support her factual assertions. Yet my review shows that Goldwyn's brief sets forth the facts giving rise to her claim. These facts are limited, but that is to be expected when a default judgment is entered, particularly in the abbreviated timeline in an eviction case: Goldwyn alleges that Riverchase filed an eviction petition after serving a 14-30 day notice, and the defendants answered. The defendants did not appear for trial until a week later, and the court entered a default judgment against them. Goldwyn moved to set aside that judgment, and the court denied that request.

Again, Goldwyn's brief is not perfect. It cites the official appellate record in a manner required by our Supreme Court Rules for some parts of its factual statement. See Supreme Court Rule 6.02(a)(4) (2025 Kan. S. Ct. R. at 36). Some factual recitations—such as the fact that the trial court denied Goldwyn's motion to set aside the default verdict—are not accompanied by record cites. But no one disputes that this is what happened. The entire trial court file in this case, excluding the transcript, is under 100 pages; Riverchase's brief concurs that this took place; and the majority opinion discusses—and quotes the body of—the trial court's ruling in its factual background. It seems unlikely that this absence of a record cite on this fact prevented meaningful review of this argument.

Indeed, as my colleagues note, Goldwyn's brief succinctly states what occurred in this case and provides the legal standards that should have guided the trial court's decision, along with a brief explanation of why she believes that relief is appropriate:

"K.S.A. 60-260(b)(l) provides that a court may relieve a party from a final judgment for reasons including mistake, inadvertence, surprise, or excusable neglect, and K.S.A. 60-260(b)(6) for any other reason that justifies relief. Defendant contends that the Default Judgment should be set aside for the following reasons:

"1. **Mistake/Inadvertence/Surprise/Excusable Neglect:** The Defendant's failure to respond to the complaint was due to the *pro se* Defendant mistakenly reading the date of the hearing wrong in the Notice of Hearing. Courts have recognized that such circumstances can constitute excusable neglect under K.S.A. 60-260(b)(l).

"2. **Meritorious Defense:** Defendant has a meritorious defense to Plaintiffs claims. Specifically, Plaintiff did not notify Defendant of any alleged complaints against her pet, as required by the lease, and most importantly, Defendant's pet is not aggressive and there is no evidence anywhere in the record that Defendant's pet has ever exhibited aggressive behaviors.

"3. **No Prejudice to Appellee:** Setting aside the Default Judgment will not result in undue prejudice to Plaintiff. Plaintiff will still have the opportunity to present its case on the merits."

In short, while Goldwyn's brief provides little in the way of analysis, I find this description sufficient to present her argument.

The second, and likely predominant, reason why the majority opinion declines to reach the merits is its response to the next section of Goldwyn's brief. There, Goldwyn purports to provide a list of "ten Kansas appellate cases where default judgments were reversed based on mistake or inadvertence under K.S.A. 60-260(b)." The brief then appears to list 10 case citations, followed by a sentence for each summarizing the case's holding. As the majority explains, these cases are inaccurately described, either in the citation form or the summary (using, for example, the docket number of a correct and relevant opinion but giving the wrong case name or description). This list appears to have been generated by an inaccurate artificial-intelligence model.

17

There is no question that the citation to inaccurate or nonexistent cases is inappropriate. Lawyers who practice in Kansas courts have, among other ethical duties, duties of competence and candor to the court; citations to computer-hallucinated cases at least technically run afoul of both responsibilities and risks discipline or other sanction. See KRPC 1.1 (Competence) (2025 Kan. S. Ct. R. at 320); KRPC 3.3 (Candor Toward the Tribunal) (2025 Kan. S. Ct. R. at 383). While Goldwyn is not a lawyer, she has a responsibility to abide by these same standards when she is representing herself in court. See *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775, *rev. denied* 315 Kan. 968 (2022). Parties' reliance on—or even inclusion of—hallucinated cases in briefing is a serious problem that courts across the country are grappling with.

While the majority opinion here purports to reach its decision based on inadequate briefing, its lengthy discussion of the faulty case citations in Goldwyn's brief makes the denial of relief feel more like a court-imposed sanction for including inaccurate AI-generated content in her argument. Riverchase did not seek this sanction in its brief; in fact, Riverchase does not mention or address the faulty case citations at all. That silence does not mean the court lacks the inherent authority to take action to safeguard the integrity of the appellate process. Nor do I disagree that some action is necessary. But my response is less extreme.

Whenever appellate courts are faced with inaccurate information in a brief, we can address that information in several ways. When the information is limited and likely inadvertent (such as a typo), we may ignore it entirely. When the information plays a more dominant role, we may reprimand the party in our opinion and strike the information from the brief, meaning it will play no role in our analysis. And when the information is so prevalent that it pervades the entire case, rendering reliance on any other statements in that brief suspect, we may strike the brief or dismiss the case entirely. In other words, the duty to provide accurate information to courts is a responsibility we

take seriously. But as in all things, the court's response should be proportionate to the violation at hand.

The information in Goldwyn' brief falls into the middle category of cases. Goldwyn's brief includes several citations to cases that are incorrect. But these cases were included as essentially a bulleted string cite to bolster her earlier argument, not cases that set the standard that the court should apply. Thus, I would strike this information and decline to consider these cases in our analysis. I would also inform Goldwyn that including other case citations without verifying them in filings in this case, whether before the appellate courts or before the trial court on a potential remand, would be deemed intentional malfeasance and would result in the case being dismissed. I would not deny relief outright.

This detour brings us back to the issue raised in Goldwyn's brief—whether the trial court erred in denying her request to reopen the default judgment, a request filed about a week after Goldwyn did not appear for trial. Excising the computer-generated string cite, the fact remains that the brief sets forth the relevant facts and citations to the record on appeal that are necessary to review the case, and it provides the correct factors for assessing whether a default judgment should be set aside. In other words, it sufficiently frames the issues for our review. And it identifies error that—in my view—requires reversal.

*The Trial Court's Error*

As Riverchase notes in its response brief in this case, appellate courts overturn a trial court's ruling on a motion to set aside a default judgment only when that ruling exceeds the bounds of the trial court's discretion in some way. *Garcia v. Ball*, 303 Kan. 560, 566, 363 P.3d 399 (2015); *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172-73, 61 P.3d 687 (2003). Appellate courts must be mindful not to overstep our role and substitute

our judgment for that of the trial court on discretionary calls. But neither is our review toothless; we must consider the legal, factual, and equitable soundness of the trial court's decision based on the governing standards and all other information available when that decision was made to determine whether the decision was reasonable. *Garcia*, 303 Kan. at 566-67.

The record shows that Goldwyn made a simple calendaring mistake. She moved to set aside the judgment quickly—about a week later, even though her roommate (whom she had been caring for) had passed away in the interim. She was up to date on rent at the time of the default and has continued to pay rent throughout this appeal. She makes factual assertions that, if true, would undermine the allegations in the petition. And the only claims of prejudice made by the defendant are attendant considerations that arise when preparing for and attending a new trial—considerations that must be balanced against the weighty consequence of evicting someone from a mobile home park without a trial on the merits.

Goldwyn's brief highlights standards that should have guided the trial court's decision here—whether her failure to appear at trial was based on excusable neglect, whether she had a potentially meritorious defense, and whether Riverchase would be prejudiced by reopening the case after judgment had been entered. The record is silent as to whether the trial court considered these questions when it denied Goldwyn's request; its ruling on her motion consisted of two sentences with no explanation.

The factors were first listed in *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 (1974), as reasons why a default judgment warranted reversal on appeal. The Kansas Supreme Court has since explained that the factors "are not gleaned from the plain language of K.S.A. 60-260(b)" but instead are borrowed from federal caselaw and are "based in equity." *Garcia*, 303 Kan. at 570. Thus, while the factors are "viable benchmarks for judicial discretion," they "should not be rigidly adhered to" when

assessing whether it is appropriate to set aside a default judgment. 303 Kan. at 570. In other words, the factors are helpful, equitable considerations for a court when assessing a motion like Goldwyn's, but they are not statutory elements or required proofs.

In analyzing these factors, given the stated preference for resolving claims on their merits, I view setting aside the default judgment as the only reasonable outcome.

*Reasons for the default.* The parties do not seriously dispute that Goldwyn provided an honest and reasonable explanation for her absence at the trial—she entered the wrong date on her phone calendar, likely due in part to the fact that she was experiencing serious health issues while also caring for Sanders. Nor is there any question that Sanders passed away on the date of the trial (albeit hours after the trial was scheduled). Even though she is not an attorney and was representing herself, Goldwyn moved to set aside the default judgment within eight days—relatively quickly given Sanders' death and everything else she was going through. Riverchase's response opposing Goldwyn's motion did not challenge this explanation; it argued other factors (what it construed as the absence of a meritorious defense and the prejudice it would suffer by reopening the case) weighed against granting relief. This is not the sort of "'reckless indifference'" Kansas courts have found to be "'inexcusable'" and thus to warrant preserving a default judgment. *Montez*, 215 Kan. at 65. Instead, it is understandable human error that warrants a second opportunity, especially given the permanence of the stakes in an eviction case.

*Goldwyn's defenses.* A person seeking to reopen a default judgment does not have to prove their case in the motion to set aside the judgment; rather, they must demonstrate that they are raising a valid claim or defense that could potentially support a judgment in their favor. See *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 534-35, 216 P.3d 158 (2009) (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2697 [1998]) ("'The demonstration of a meritorious defense is not expressly called for

21

by the federal rules and, therefore, *the nature and extent of the showing that will be necessary is a matter that lies within the court's discretion. . . . The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.*'"). The answers filed in this case identify two potentially meritorious defenses to the eviction petition: that the allegations in the petition are factually false and that the dog is a service dog (which seems tenuous on its face, but if true would trigger other legal protections). I make no prediction as to whether these defenses would ultimately succeed, but they are genuine factual issues Goldwyn can testify about that warrant the evidentiary testing of a trial.

*Prejudice to Riverchase.* In *Garcia*, the Kansas Supreme Court explained that the type of prejudice that would warrant denying a motion to set aside a default judgment might include allegations "that evidence had been destroyed or that [the plaintiff] had undertaken any action in reliance of the default judgment." 303 Kan. at 571. These circumstances are markedly different than the plaintiff's unavailing allegations of prejudice in *Montez*, where the plaintiff "could show no prejudice from setting aside the judgment except that she would be required to prove her case." 215 Kan. at 65.

I discern little difference between the plaintiff in *Montez* wishing not to litigate that case and Riverchase's assertion that setting aside the default judgment here would require it to recall witnesses and have its attorney appear for another eviction trial. Riverchase's postulations about potential other detriments are either speculative (uncertainty if Riverchase's employee witnesses would be available for another trial) or could be addressed through a less extreme sanction than a default judgment (such as requiring Goldwyn to pay the attorney fees associated with the first trial).

In the end, my review of the trial court's two-sentence ruling—rendered two days after Goldwyn filed her motion and one day after Riverchase filed its response—does not give me confidence that the court considered and correctly applied these governing

standards. And neither am I convinced that the court's ruling was based on a reasonable balance of the equities at play in this case, especially considering the Kansas Supreme Court's stated preference for hearing a case on the merits. In fact, the trial court spent considerably more time analyzing whether it should stay its ruling and enter an appeal bond than it did on the question of whether the default judgment should be set aside. The trial court ultimately granted that stay and bond, meaning Goldwyn has remained on Riverchase's property for more than a year after any reopened eviction trial on the merits would have occurred. That delay seems a bizarre result from a court unwilling to consider the merits of the case. In these circumstances, "the exercise of sound judicial discretion required the setting aside of the judgment." 215 Kan. at 65.

This case illustrates a tension between several principles that underpin our judicial process. The adversarial court system requires the active, ethical participation of litigants to resolve disputes, and the decision not to participate in a trial—or to participate with less than a candid approach on appeal—can carry weighty consequences for the defaulting party. Once judgment has been rendered in a case, a presumption of finality attaches, and the judgment should be reopened only in certain circumstances. And even amid these other considerations, principles of law and equity strongly favor resolving claims on their merits.

We do not know what evidence would have been presented at trial if this case had been heard on the merits. Riverchase's assertions may have been substantiated along the lines outlined in the majority opinion, and Goldwyn may not have been able to prove her defenses. Or the opposite could have occurred. But equity demands that Goldwyn should be granted another opportunity to present evidence of her defenses in court. I would find the decision to deny that opportunity implicitly unreasonable and reverse the trial court's judgment. I thus respectfully dissent.